United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 5, 2006**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-51233

_____

CONNIE CORNELIUS ROBINSON,

Petitioner-Appellant,

VERSUS

NATHANIEL QUARTERMAN,

DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
m SA-03-CA-897-NN

_____

Before SMITH, BENAVIDES, and PRADO,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Connie Robinson appeals the denial of his petition for writ of habeas corpus. Finding only harmless error, we affirm.

### I.

San Antonio police Daniel Vega and Ron Heinrich responded to a 911 call made from the home of Myrtle Edwards. There the officers found Edwards, Robinson, and Nisha Spikes, who appeared frightened and was icing

a large bump on her forehead. Heinrich questioned Robinson outside the house, while Vega remained inside and questioned Spikes. Robinson, a convicted felon, was arrested for outstanding traffic tickets but ultimately was charged with unlawful possession of a firearm by a felon.

At trial Vega testified that upon arriving at the house he questioned Spikes, who reported that Robinson was driving Spikes and Edwards home from a nightclub when the car hit a guardrail and was damaged.[1] After they arrived at Edwards's house and Edwards went to bed, Robinson accused Spikes of causing the accident and began to hit her, causing the swollen area on her head. The noise from the scuffle woke Edwards, who called 911.

Before police arrived, Robinson removed a gun from his waistband and concealed it in a pizza box. After Spikes reported the gun's location, Vega entered the kitchen and found a gun in a pizza box. Robinson denied that the gun was his, and no fingerprints were recovered from the weapon.

Edwards testified that she and Spikes had gone to the nightclub together, where they met Robinson, a friend of Spikes's, who was armed. While Robinson was driving them home, Spikes took Robinson's gun from him and emptied the bullets by firing it five or six times out the window. After going to bed, Edwards was awakened by Spikes's yelling as Robinson was hitting her.

After Vega had finished questioning Spikes and the officers were preparing to leave, Spikes told Edwards that Robinson had hidden the gun. Edwards asked Spikes why she had not told the police about the gun, and in response Spikes called the police back and informed them that Robinson had concealed his gun in the kitchen. Edwards witnessed Vega's retrieval of the gun from the pizza box after Spikes had related its location.

On cross-examination, Robinson impeached Edwards by eliciting testimony that she had served jail time for a theft conviction. She had also written romantic letters to Robinson while he was in jail, which demonstrated Edwards's attraction to him and her jealousy of Spikes. Edwards thus, according to Robinson, was motivated to provide false testimony, because if Robinson went to prison it would separate him from Spikes. Robinson was not permitted to cross-examine Edwards about her deferred adjudication status and residence at the Bexar County jail at the time of her testimony.

A jury convicted Robinson of unlawful possession of a firearm by a felon, and he was sentenced to a ninety-nine-year prison term. He unsuccessfully challenged his conviction on direct appeal and through state postconviction application. After he filed a federal habeas petition pursuant to 28 U.S.C. § 2254, the magistrate judge found, *inter alia*, that the trial court had violated the Confrontation Clause of the Sixth Amendment, but held that the error was harmless and denied the petition. We granted a certificate of appealability to determine whether "the trial court erred in denying [Robinson] the right to cross-examine Edwards about her deferred adjudication status."[2]

---

[1] Spikes did not testify at trial, because she could not be located. Vega's account of Spikes's statements was admitted pursuant to the hearsay exception for excited utterances. *See* TEX. R. EVID. 803(2).

[2] Robinson also moves for reconsideration of
(continued...)

## II.

Because Robinson is a *pro se* litigant, we liberally construe his brief and apply less stringent standards in interpreting his arguments than we would in the case of a counseled party. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). "In a habeas corpus appeal, we review the district court's findings of facts for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004) (citing *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001)).

"[W]e must defer to the state habeas court unless its decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Haynes v. Cain*, 298 F.3d 375, 379 (5th Cir. 2002) (en banc) (quoting 28 U.S.C. § 2254-(d)(1)). "A decision is contrary to clearly established Federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Finally, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) (citing 28

U.S.C. § 2254(e)(1)).

## III.

We now consider whether the trial court erred in denying Robinson the right to cross-examine Edwards about her deferred adjudication status and residence at the county jail at the time of her testimony. If it so erred, we must decide whether such error was harmless.

## A.

The Sixth Amendment guarantees a defendant the right to confront hostile witnesses.[3] The trial court denied Robinson's requested cross-examination because, based on Texas law, Robinson had failed to show sufficient actual bias or prejudice. This denial, contrary to clearly established federal law, violated Robinson's Confrontation Clause right.

The magistrate judge correctly found that the trial court's decision contravened Supreme Court precedent. In *Alford v. United States*, 282 U.S. 687 (1931), the Court upheld the defendant's right to impeach a witness by demonstrating that, because of the witness's incarceration at the time of his testimony, his "testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States." *Id.* at 693. The Court revisited this issue in *Davis v. Alaska*, 415 U.S. 308 (1974), and held that it was a violation of the Confrontation Clause for the trial court to deny cross-examination of the crime's only eyewitness about his probationary status. The witness was on probation for a crime committed while he was a juvenile, but the Court found that the Confrontation Clause trumped

<hr>

²(...continued) the ruling that his reply brief was not timely filed, but he provides no evidence to corroborate his claim that he moved for a filing extension until December 19 and that he placed the brief in the prison mail system on December 14. It was not received at the clerk's office until January 12, so we find it to be untimely.

<hr>

[3] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.

the state's important interest in protecting the confidentiality of a juvenile offender's record. *Id.* at 320.

It is curious that the state does not attempt to distinguish these two Supreme Court cases on which the magistrate judge rested her holding. Indeed, its brief does not mention either; instead, it claims that in *United States v. Hamilton*, 48 F.3d 149 (5th Cir. 1995), we held that a judge is within his discretion to deny cross-examination about a witness's deferred adjudication status. Two cases, both of which are cited elsewhere in the state's brief, plainly show that this argument is meritless.

The proposition for which the state cites *Hamilton* has been limited to instances in which the witness is on deferred adjudication for a misdemeanor.[4] Edwards was charged with a felony,[5] so *Hamilton* is inapposite. Also, Hamilton's need to cross-examine the witness about his adjudicatory status was mitigated, because "Hamilton was permitted to elicit evidence regarding the pending misdemeanor offenses during the cross examination of another witness." *Landerman*, 109 F.3d at 1063 n.15. Robinson, unlike Hamilton, had no such opportunity to demonstrate Edwards's pending offense.

The trial court should have protected Robinson's constitutional right to cross-examine Edwards about her deferred adjudication

---

[4] *See United States v. Alexius*, 76 F.3d 642, 646 (5th Cir. 1996); *United States v. Landerman*, 109 F.3d 1053, 1063 n.15 (5th Cir. 1997).

[5] Edwards was on deferred adjudication for possession of cocaine under twenty-eight grams, which is a felony under Texas law. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a), (d) (Vernon 2003).

status and residency at the county jail at the time of her testimony. The failure to do so was contrary to clearly established Federal law.

### B.

"[I]mproper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Robinson urges us to use the standard articulated in *Chapman v. California*, 386 U.S. 18, 24 (1967), which holds that error is reversible unless it is "harmless beyond a reasonable doubt." On habeas review, however, we are bound to apply *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), under which a defendant must show that the error resulted in "actual prejudice." Actual prejudice is present if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Robinson claims that because the merits of his Confrontation Clause claim were not considered on direct review, he never received the benefit of the *Chapman* standard, and thus we must apply it here. We have rejected this argument and the analysis of the Eighth Circuit cases cited by Robinson, and we have held that the *Brecht* standard applies on habeas review, regardless of the claim's treatment on direct review. *See Hogue v. Johnson*, 131 F.3d 466, 498-99 (5th Cir. 1997).[6] Under *Brecht*, "it is

---

[6] The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") did not affect this holding. *Robertson v. Cain*, 324 F.3d 297, 299 (5th Cir. 2003) ("We hold that AEDPA's restrictions on federal review of state habeas decisions do not alter *Brecht*'s mandate for harm-
(continued...)

not for this court to decide whether we think the jury's verdict was correct; instead, the question for the court is whether we have a grave doubt that the constitutionally erroneous instruction . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Robertson*, 324 F.3d at 309 (internal citations and quotations omitted).

### C.

The magistrate judge found that the error was harmless, and we agree. To make this determination, we carefully consider the likely effect that Edwards's deferred adjudication status and residency at the county jail would have had if the jury had been empowered to give it full consideration.

Robinson argues that the error was not harmless because Edwards would have been impeached if the cross-examination had been permitted; the alleged criminal activity would have damaged Edwards's credibility. Further, Robinson would have argued that the gun belonged to Edwards, who was prohibited from possessing a firearm while on probation. Edwards was thus motivated to lie about Robinson's ownership of the gun, because she would be punished for a probation violation if the police discovered that the gun was hers. This reasoning, however, does not overcome the harmless error standard.

There are four reasons that, taken together, convince us the error is harmless. First, Robinson did not produce any evidence tying Edwards to the gun. Second, Edwards was not trying to avoid contact with law enforcement.

Third, Edwards's credibility was impeached through other means. Finally, Edwards's testimony was corroborated.

Robinson produced no evidence tying Edwards to the gun. The trial court denied Robinson's requested cross-examination because, among other reasons, Robinson "[hadn't] even established [that the gun belonged to Edwards] in any way, shape, or form, not even close to that." And later in the trial, "[t]here's nothing to tie the gun to her. Nothing." This connection is critical, because Robinson intended to use Edwards's status to show that unless she lied and convinced the police that the gun belonged to Robinson she would be charged with a probation violation. To be logically effective, however, this argument requires at least some evidence showing that the gun could belong to Edwards, evidence Robinson could not marshal. If there was no reasonable basis for thinking that the gun belonged to Edwards, it is unlikely she would feel compelled to lie to avoid a probation violation for owning the gun.

Second, Edwards was not trying to avoid contact with the police. In fact, it was she who made the 911 call that summoned them to the house. Edwards also testified that Spikes did not initially tell Vega about the gun but did so only after Edwards's prompting. Edwards's behavior does not indicate an overwhelming intent to avoid interaction with police about the gun. It is plausible that the jury could even find that Edwards's credibility was bolstered by her status; despite the fact that she was on probation, she initiated contact with the police. The jury may have found that if the gun was hers, she was unlikely to have called 911 and to have encouraged Spikes to report the gun to the officers, because these actions would place her at risk of being found in violation of her probation.

[6](...continued) less error analysis by federal courts when state courts have failed to address the question of harmless error.").

Third, Edwards's credibility was impeached through other means. Robinson introduced evidence that Edwards was not trustworthy based on her theft conviction. He also demonstrated that Edwards had sent Robinson romantic letters, which may have indicated that her testimony was biased by a jealousy of Spikes and a desire to see Spikes and Robinson separated. Though the introduction of Edwards's deferred adjudication status and residency in the county jail may have further damaged her credibility, it would not be impeaching otherwise reputable testimony, but only adding one more reason to the two already given to the jury as to why Edwards was not credible.

Finally, as the magistrate judge found, Edwards's testimony was corroborated. Several details of her testimony, including that the gun belonged to Robinson, were corroborated by Spikes's report to Vega. Edwards's and Spikes's accounts were corroborated by Vega's testimony that Spikes showed visible signs of being struck in the head, and that the gun was in the pizza box.

At this stage of habeas review we do not determine whether we think the jury verdict was correct. We do not consider whether any of the above reasons, standing alone, or even any two or three of them together, would render the error harmless. But taking into account all four reasons, and adhering to the required standard of review, we do not have a grave doubt that the trial court's error had a substantial and injurious effect or influence on the verdict. Thus, under *Brecht*, this error was harmless.

### IV.

In summary, the trial court violated Robinson's constitutional right to confront Edwards about her deferred adjudication status and residency at the county jail at the time of her testimony. This error, however, was harmless, so we AFFIRM the denial of the petition. We also DENY the motion for reconsideration of our ruling on the timeliness of the reply brief.

6