EMILIO M. GARZA, Circuit Judge:
Burl Cain, the warden of the Louisiana State Penitentiary (the “Warden”), appeals the district court’s grant of a writ of habe-as corpus to Brandon Haynes pursuant to 28 U.S.C. § 2254 on his Sixth Amendment ineffective assistance of counsel claim. A panel of this court, analyzing Haynes’ ha-beas petition under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. 104-132, 110 Stat. 1269, affirmed the district court’s ruling. The panel majority held that Haynes’ counsels’ decision to concede guilt on the lesser-included offense of second degree murder in a capital murder case amounted to a constructive denial of counsel under United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). We granted rehearing en banc, thereby vacating the panel opinion. See Fifth Cm. R. 41.3.
Subsequently, the Supreme Court clarified the scope of the second Cronic exception to Strickland in Bell v. Cone, — U.S. *377 -, -, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914, - (2002). In Bell, the Court reaffirmed that Cronic applies in those cases in which defense counsel “entirely fails to subject the prosecution’s case to meaningful adversarial testing.” Bell, — U.S. at-, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). More importantly, it clarified that an attorney’s failure must be complete, noting that the difference between the situations addressed by Strickland and Cronic is “not of degree but of kind.” Id. We now must determine whether the Louisiana state court’s application of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) in this case was contrary to, or involved an unreasonable application of, clearly established federal law. In order to do so, we must decide whether Haynes’ attorneys’ decision to partially concede guilt resulted in a constructive denial of counsel under Cronic, or whether it was a valid trial strategy, which we review under the usual test for constitutionally adequate assistance of counsel articulated by the Supreme Court in Strickland.
I
In October of 1993, Haynes was employed on a construction project at the Louisiana State University Biomedical Center in Shreveport, Louisiana. Around midnight on October 27, 1993, Haynes entered the LSU Medical Center, which was located next to the construction site. While walking through the Medical Center, Haynes encountered a female graduate student, Fang Yang, who was conducting research in one of the Medical Center’s laboratories. Haynes forcibly took Yang to the roof of the building where he proceeded to rape and rob her. At some point during the rape and robbery, Yang either fell or was thrown off the roof of the ten-story building. Construction workers discovered her body the following morning. An autopsy revealed that Yang had died as a result of injuries from the fall. The autopsy also found several non-fatal cuts on Yang’s body, which the medical examiner believed were compliance or torture wounds, as well as semen residue in Yang’s vagina and rectum.
Police subsequently identified Haynes as a suspect based on video surveillance tapes showing Haynes on the upper floors of the Medical Center turning off other surveillance cameras on the night of the attack, as well as an eyewitness who confirmed that Haynes was in fact in the building on the night Yang was killed. Haynes was arrested and indicted for first degree murder.
The evidence establishing Haynes’ involvement in the abduction and killing of Yang was substantial. In addition to the video surveillance tapes and an eyewitness placing Haynes in the Medical Center on the night of the crime, police found human blood in Haynes’ car and on his pants. They also recovered Yang’s wallet, which Haynes had hidden in the wall of his home. Moreover, DNA analysis established that it was Haynes’ semen that was found in the victim.
At trial, the prosecution theorized that Haynes had intentionally killed Yang during the course of her rape and armed robbery.[1] Haynes’ two attorneys’ strategy aimed solely at avoiding a first degree murder conviction and with it the possibility of the death penalty. Defense counsel *378 conceded that the evidence established that Haynes kidnaped, raped, and robbed Yang, but argued that it did not establish that Haynes intentionally killed her. Thus, according to defense counsel, Haynes only could be convicted for second degree murder.[2]
Pursuant to this strategy, Haynes’ counsel, during his opening statement, began by telling the jury that he would be “up front” with them. He conceded that Haynes' kidnaped, raped, and robbed Yang and that the victim perished shortly after these offenses occurred. He then contrasted the overwhelming evidence establishing these facts with the paucity of evidence regarding Haynes’ specific intent to kill Yang.
Following the defense’s opening statement, Haynes addressed the court outside the presence of the jury. Haynes objected to his attorneys’ concessions and stated that he was innocent. Haynes further stated that he specifically requested that his attorneys not make any concessions regarding his guilt for the commission of the offense. Haynes also asked the court to appoint new attorneys. The state trial court denied his request, assuring him that he had excellent lawyers and could testify if he wished.
The jury found Haynes guilty of first degree murder, but could not agree on an appropriate punishment. The trial court therefore sentenced Haynes to life imprisonment without the possibility of parole. See La.Code Crim. P. art. 905.8.[3] The Louisiana appellate and supreme courts subsequently upheld Haynes’ conviction on direct appeal.
Haynes then sought state post-conviction relief, alleging that he had received ineffective assistance of counsel at trial because of his counsels’ unauthorized concessions of partial guilt. The Louisiana Court of Appeal, applying Strickland, denied relief upon finding that defense counsels’ partial concessions were part of a valid trial strategy which succeeded in avoiding the death penalty. See State v. Haynes, 662 So.2d 849, 852-53 (La.Ct.App. 1995).[4]
Haynes then filed a federal habeas petition, renewing his ineffective assistance of counsel claim. The district court granted Haynes’ habeas petition, concluding that the state court had applied the incorrect legal standard in evaluating Haynes’ claim. Specifically, the district court held that Haynes’ attorneys’ partial concession of guilt without Haynes’ consent constituted a constructive denial of counsel. Relying on Cronic, the court held that Haynes was not required to show that his attorneys’ concessions actually prejudiced him, as required by Strickland. In reaching its decision, the district court did not discuss or *379 apply AEDPA’s deferential scheme. The panel majority affirmed the district court’s decision.
II
The Warden maintains that the district court and the panel majority erred in granting federal habeas relief because the state habeas court’s decision was not contrary to, or an unreasonable application of, clearly established federal law. In response, Haynes asserts that the state ha-beas court’s decision was contrary to clearly established federal law because the state court applied the wrong legal standard. Specifically, Haynes maintains that the state court should have evaluated his ineffective assistance of counsel claim under Ooracinstead of Strickland. Thus, according to Haynes, the district court properly granted habeas relief.
Because Haynes filed his habeas petition on July 12, 1999, our review is governed by AEDPA. See Lindh v. Murphy, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, we must defer to the state habeas court unless its decision “was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).[5] Because the district court failed to conduct its review under AEDPA, instead applying the Supreme Court’s precedent de novo, it violated AEDPA’s dictate that federal district courts should defer to state habeas court decisions unless their adjudication is either “contrary to,” or an “unreasonable application” of, clearly established Supreme Court precedent.[6] Williams v. Taylor, 529 U.S. 362, 404-405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The “contrary to” and the “unreasonable application” clauses in § 2254(d) have independent meaning. Id. A federal habeas court may issue a writ under the “contrary to” clause “if the state court applies a rule different from the governing law set forth in the [Supreme Court’s] cases, or if it decides a case differently than [the Supreme Court] ha[s] done *380 on a set of materially indistinguishable facts.” Bell, 122 S.Ct. at 1850. Under the “unreasonable application” clause, a federal habeas court may grant a habeas writ if “the state court correctly identifies the governing legal principle from [the Supreme Court’s] decisions but unreasonably applies it to the facts of the particular case.” Id.
The Supreme Court in Bell analyzed a similar case under AEDPA’s “contrary to” clause in which the petitioner argued that Cronic applied because defense counsel entirely failed to submit the prosecution’s case to meaningful adversarial testing. Id. Ordinarily, to prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy Strickland’s familiar two-part test. Strickland, 466 U.S. at 700, 104 S.Ct. 2052. First, “a defendant must demonstrate that ‘counsel’s representation fell below an objective standard of reasonableness,’ with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.” Andrews v. Collins, 21 F.3d 612, 621 (5th Cir.1994) (quoting Strickland, 466 U.S. at 688,104 S.Ct. 2052). When assessing whether an attorney’s performance was deficient, the court “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Second, if counsel was deficient, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694,104 S.Ct. 2052.
The Supreme Court’s decision in Cronic created a very limited exception to the application of Strickland’s two-part test in situations that “are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified.” Cronic, 466 U.S. at 658, 104 S.Ct. 2039. The Supreme Court has identified three situations implicating the right to counsel where the Court will presume that the petitioner has been prejudiced. Bell, — U.S. -, at -, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914, at -. First are situations in which a petitioner is denied counsel at a critical stage of a criminal proceeding. Bell, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). Second, and most relevant here, are situations in which a petitioner is represented by counsel at trial, but his or her counsel “entirely fails to subject the prosecution’s case to meaningful adversarial testing.” Id. Finally, prejudice is presumed when the circumstances surrounding a trial prevent a petitioner’s attorney from rendering effective assistance of counsel. Id. (citing Powell v. Alabama, 287 U.S. 45, 57-58, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).
Haynes argues that the second exception applies in this instance and therefore he is relieved from establishing prejudice. Specifically, he contends that his counsel failed to subject the prosecution’s case to meaningful adversarial testing on the individual elements constituting the lesser-included offense of second degree murder. In Bell, the Supreme Court clarified when an attorney’s failure to subject the prosecution’s case to meaningful adversarial testing results in a constructive denial of counsel. The Court, reiterating language in Cronic, stated that an attorney must “entirely fail[ ] to subject the prosecution’s case to meaningful adversarial testing” for the presumption of prejudice to apply. Bell, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039) (emphasis in original). In other words, an attorney must completely fail to challenge *381 the prosecution’s case, not just individual elements of it. Id. Critically for purposes of this appeal, the Court further noted that when applying Strickland or Cronic, the distinction between counsel’s failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a “difference ... not of degree but of kind.” Id. Under this rationale, when counsel fails to oppose the prosecution’s case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. Id. at 1851-52. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution’s case. Such strategic decisions do not result in an abandonment of counsel, as when an attorney completely fails to challenge the prosecution’s case. Under the Court’s reasoning, then, Cronic is reserved only for those extreme cases in which counsel fails to present any defense. We presume prejudice in such cases because it is as if the defendant had no representation at all. In contrast, strategic or tactical decisions are evaluated under Strickland’s traditional two-pronged test for deficiency and prejudice.
Previous circuit court decisions have elaborated on this distinction between ineffective assistance of counsel and the constructive denial of counsel. Collectively, these decisions reinforce the notion that defense counsel must entirely fail to subject the prosecution’s case to meaningful adversarial testing for the Cronic exception to apply. Gochicoa v. Johnson, 238 F.3d 278, 285 (5th Cir.2000) (holding that “[wjhen the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel” (quoting Goodwin v. Johnson, 132 F.3d 162, 176 n. 10 (5th Cir.1997))). Thus, when analyzing an attorney’s decision regarding concession of guilt at trial, courts have found a constructive denial of counsel only in those instances where a defendant’s attorney concedes the only factual issues in dispute. See United States v. Swanson, 943 F.2d 1070, 1074 (9th Cir.1991) (holding that “[a] lawyer who informs the jury that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed to subject the prosecution’s case to meaningful adversarial testing”). In contrast, those courts that have' confronted situá-tions in which defense counsel concedes the defendant’s guilt for only lesser-included offenses have consistently found these partial concessions to be tactical decisions, and not á denial of the right to counsel.[7] As such, they have analyzed them under the two-part Strickland test.
In the instant case, Haynes’ defense counsel did not entirely fail to subject the prosecution’s case to meaningful adversarial testing. Rather, Haynes’ attorneys acknowledged that the prosecution’s evidence establishing that Haynes raped and *382 robbed Yang was overwhelming. After making this specific concession, however, Haynes’ attorneys remained active at trial, probing weaknesses in the prosecution’s case on the issue of intent. They cross-examined state witnesses to emphasize that Yang wore thick glasses which were never located and that the victim landed face down when she fell, supporting then-theory that she may have accidentally fallen when trying to flee from Haynes. They also elicited testimony that Yang’s pants were only “slightly” pulled down in an attempt to show that she could have run off the roof under her own power. Defense counsel hoped that this strategy would de-emphasize the graphic nature of the crime and would focus the jury’s attention on the one area where the prosecution’s case was not exceedingly strong.
In sum, this is not a situation in which Haynes’ attorneys abandoned their client. Instead, they continued to represent him throughout the course of the trial, adopting a strategy which in their judgment accorded Haynes the best opportunity for a favorable outcome. Ultimately, then-strategy proved effective in avoiding the death penalty for their client. As the Supreme Court indicated in Bell, when defense counsel pursue a strategy, even if it involves conceding certain elements or remaining inactive at specific points during the trial, we will examine the effectiveness of their performance and the propriety of their decisions under Strickland. Bell, 122 S.Ct. at 1851-52. Thus, we hold that the Louisiana state court properly identified Strickland as the correct governing legal principle under which to evaluate Haynes’ ineffective assistance of counsel claim. The state court’s adjudication of Haynes’ habeas petition, therefore, was not contrary to clearly established federal law.
Ill
Having concluded that the state ha-beas court evaluated Haynes’ claim under the correct legal standard, the sole remaining issue is whether the state court’s adjudication of Haynes’ claim under Strickland involved an “unreasonable application” of that standard to the facts of this case. Because we are reviewing this case under AEDPA’s deferential scheme, Haynes must do more than merely show that the state habeas court incorrectly applied Strickland to this case. Rather, he must demonstrate that the Louisiana Court of Appeal applied Strickland in an objectively unreasonable manner. See 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 411, 120 S.Ct. 1495.
Haynes’ counsel faced the demanding task of defending a client who was accused of committing a brutal and senseless crime. The prosecution had nearly conclusive proof that Haynes raped, robbed, and then murdered Yang. The prosecution had videotape of the defendant and eyewitness testimony both placing Haynes at the crime scene. DNA test results established that his semen was found in the victim. The police found a knife, which could have caused the cuts found on the victim, in Haynes’ car. The police also located Yang’s wallet in Haynes’ home. Given the overwhelming evidence defense counsel faced, the Louisiana Court of Appeal was not unreasonable in concluding that the strategy ultimately adopted by Haynes’ attorneys likely succeeded in obtaining the best possible outcome under the circumstances.
Nevertheless, it is plausible that the failure of Haynes’ attorneys to obtain his consent might constitute deficient performance under Strickland. Even assuming, however, that Haynes has established deficient performance, he has failed to show prejudice. For Haynes to establish prejudice, he must “show that there is a rea *383 sonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Based on the prosecution’s nearly conclusive evidence that Haynes committed the offense in question, the Louisiana Court of Appeal properly concluded that Haynes had faded to establish that without the concession strategy, he would have been acquitted of first degree murder. Consequently, Haynes cannot show that the state habeas court’s conclusion that he was not prejudiced by his attorneys’ strategy was objectively unreasonable.
IV
We hold that the state court’s decision applying Strickland to Haynes’ ineffective assistance of counsel claim was not “contrary to” the governing law set forth by the Supreme Court for ineffective assistance of counsel cases. Moreover, we hold that the state court did not unreasonably apply Strickland to the facts of this case. Based on the foregoing reasons, we REVERSE the district court’s grant of a writ of habeas corpus to Haynes.

. Under Louisiana law, first-degree murder requires proof of a "specific intent to kill or to inflict great bodily harm” during the course of an enumerated offense. See La. R.S. 14:30A(1). The enumerated offenses include second degree kidnaping, aggravated rape, and armed robbery.

. Under Louisiana law, second degree murder applies where a person dies during the course of an enumerated offense, but the defendant lacks the specific intent to kill the victim. See La. R.S. 14:30A(2).

. La.Code Crim. P. art. 905.8 provides:
The court shall sentence tire defendant in accordance with the determination of the jury. If the jury is unable to unanimously agree on a determination, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
La.Code Crim. P. art. 905.8.

. Haynes did not initially seek relief in the Louisiana Supreme Court. The federal district court dismissed his initial § 2254 habeas petition without prejudice for failure to exhaust state law remedies on his ineffective assistance of counsel claim. The Louisiana Supreme Court denied Haynes' petition for a writ of certiorari and/or review. In re Haynes, 667 So.2d 1050 (La. 1996). Haynes then filed the instant federal petition.

. 28 U.S.C. § 2254 provides:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
28 U.S.C. § 2254(d)(1).

. The dissent does likewise. It contends that this case is controlled by the Supreme Court's decision in Faretta. The dissent does not address or attempt to distinguish Bell. In fact, the dissent concedes that Cronic is inapplicable and Haynes' attorneys’ conduct was not deficient under Strickland. The dissent finds a constitutional violation because Haynes' attorneys conceded a lesser included offense, but it ignores that basic distinction between conceding the only factual issues in dispute and acknowledging that the evidence establishing a lesser included offense is overwhelming that is at the core of the Strickland / Cronic distinction in this context. Underwood v. Clark, 939 F.2d 473, 474 (7th Cir. 1991) (Posner, J.) (stating that “if his lawyer told the jury in closing argument, 'my client has decided to plead guilty,' that would be a forced plea ... it is otherwise if in closing argument counsel acknowledges what the course of the trial has made undeniable-that on a particular count the evidence of guilt is overwhelming”). Moreover, the dissent fails to accord the state habeas court's decision the proper AEDPA deference compelled by the dissent's concessions. AEDPA's deferential scheme is the touchstone for federal habeas review, giving “effect to state convictions to the extent possible under the law.” Williams, 529 U.S. at 404. Circumventing this scheme and essentially retrying a state decision on federal ha-beas review is contrary to Congress's intent to limit the role of the federal courts in this area.

. See United States v. Short, 181 F.3d 620, 624-5 (5th Cir.1999) (holding that counsel's statements, which did not admit guilt, but which implicated the defendant, were reasonable in light of the overwhelming evidence presented at trial); Lingar v. Bowersox, 176 F.3d 453, 458 (8th Cir.1999) (stating that "the decision to concede guilt of the lesser charge of second-degree murder was a reasonable tactical retreat rather than a complete surrender”); Underwood v. Clark, 939 F.2d at 474 (concluding that defense counsel's concession during closing arguments of a lesser included offense was "a sound tactic when the evidence is indeed overwhelming ... and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury”); McNeal v. Wain-wiight, 722 F.2d 674, 676 (11th Cir. 1984) (finding that McNeal's attorney's statements conceding manslaughter during a murder trial were tactical and strategic and did not constitute a forced guilty plea).