

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2007

# Davenport v. DiGuglielmo

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2442

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Davenport v. DiGuglielmo" (2007). *2007 Decisions.* Paper 1664.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1664

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2442

ELMER DAVENPORT,
                                        Appellant

v.

*DAVID DIGUGLIELMO;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

(*Substituted Pursuant to Fed. R. App. P. 43(c))

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-5316
(Honorable Gene E.K. Pratter)

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 22, 2007

Before: SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*

(Filed February 7, 2007 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Elmer Davenport, a state prisoner serving a life sentence for second degree murder, rape, and theft, appeals from the District Court's order denying his 28 U.S.C. § 2254 habeas petition. We have jurisdiction under 28 U.S.C. § 2253, and will affirm.

I.

On July 22, 1992, following a bench trial, Davenport was convicted in state court of second degree murder, rape, and theft. Davenport worked as a bouncer at Ted's High Spot at 58th and Chester Avenue in Philadelphia and he reported to work on the evening of October 21, 1990.[1] During his shift, Davenport bought a drink for the victim, Theresa Dickerson, at her request. Davenport's live-in girlfriend, Lisa Sharp, witnessed the exchange and argued with Davenport about it, eventually telling him their relationship was over. Throughout the evening, Davenport consumed two six-packs of beer, some liquor shots, and crack cocaine.

Around 2:30 or 3:00 a.m., Davenport left Ted's High Spot, bought some crack caps, and went home. After realizing he was locked out of his apartment, Davenport wandered the streets to find Sharp, who had the key. At 55th and Chester Avenue, Davenport ran into Dickerson. Dickerson told the defendant she wanted to smoke the

---

[1] The following narrative is derived from the trial testimony of Davenport and Sharp, and Davenport's statement to police after his arrest.

caps. Davenport purchased additional crack caps and the two proceeded to a playground at 59th and Chester Avenue to smoke the crack.

The defendant began to have intercourse with Dickerson, as part of a deal made in exchange for his crack. Dickerson screamed at Davenport to stop, claiming he was being too rough, and punched him when he would not stop. Dickerson called out for her boyfriend, Crest, for help. This provoked Davenport, who started choking Dickerson, while laying on top of her, to stop her from screaming. At one point, Davenport stopped choking Dickerson, and she began to breathe again. But he then resumed choking her until she was no longer moving. Davenport stayed with the victim for over an hour and watched her die.

Upon returning home around 6:30 a.m., Davenport told Sharp he had killed somebody. After Sharp claimed she did not believe him, he brought her to the playground to show her Dickerson's body. When they returned home, Davenport showed Sharp the victim's purse and told her he had continued choking Dickerson because he was afraid she would have called the police if he did not kill her.

Police found Dickerson's body on the afternoon of October 22, 1990, and she was pronounced dead at the scene at 2:40 p.m. The Assistant Medical Examiner testified the cause of death was manual strangulation, which could have been caused by "applying the hands, and then loosening them, then reapplying, then loosening again." After being arrested for Dickerson's murder, Davenport signed a written confession to this charge.

During the bench trial in the Philadelphia County Court of Common Pleas, Davenport testified he choked Dickerson to death. For the first time, he claimed he acted in self-defense because she had stabbed him before he started to strangle her. He testified he strangled her once, paused, then started choking her again. During the trial, defense counsel cross-examined the witnesses. In his closing argument, defense counsel told the court, "[t]here is no doubt you have a murder here," and went on to assert a third degree diminished capacity defense. The judge found Davenport guilty of second degree murder, rape, and theft.

On March 14, 1994, the trial court denied Davenport's Motion for a New Trial and sentenced him to life imprisonment for second degree murder, and concurrent sentences of ten to twenty years for rape and eleven-and-a-half to twenty-three months for receiving stolen property. Davenport appealed his conviction to the Pennsylvania Superior Court, alleging, among other things, ineffective assistance of counsel for conceding the offense of murder. The Superior Court found defense counsel had consulted with Davenport about the diminished capacity defense.[2] *Commw. v. Davenport*, 663 A.2d 246 (Pa. Super.

---

[2] Defense counsel testified at the post-verdict hearing:
> I told [Davenport] that due to the nature of the statement [to police] and what was contained in the statement, that I believed diminished capacity might be a potential way he could go with this particular case. He indicated to me that was basically something he would consider. As a matter of fact, I had Doctor Tepper go examine him concerning that, and he spoke to Doctor Tepper up in the cell room upstairs . . . . What we kept going back to was– and you have to take this in the context, Judge, he got on the stand and admitted he killed the woman, basically, in
>
> (continued...)

4

Ct. 1995) ("The record evidence discloses that appellant's trial counsel testified at the post-verdict hearing that he and appellant discussed the defense of murder by diminished capacity, and that in preparation for this defense, appellant submitted to a psychiatric evaluation. Our review of the record demonstrates that the trial court properly credited the testimony of trial counsel and rejected appellant's argument."). On April 11, 1995, the Pennsylvania Superior Court affirmed the trial court's judgment of sentence, finding Davenport's ineffectiveness claim regarding the murder concession without merit. *Id.*

The Pennsylvania Supreme Court denied review on October 2, 1995. *Commw. v. Davenport*, 666 A.2d 1051 (Pa. 1995). Davenport filed a pro se Motion for Post Conviction Collateral Relief on April 1, 1996, which was dismissed by the Philadelphia County Court of Common Pleas on November 6, 1997. *Commw. v. Davenport*, No. 9103-1442-1446 (Phila. County Ct. C.P. Feb. 5, 1998) (opinion dismissing PCRA petition). The Pennsylvania Superior Court denied his appeal on October 28, 1997, finding no merit to the ineffectiveness claim because "Davenport's trial counsel testified

---

[2](...continued)
this courtroom . . . . Voluntary manslaughter and involuntary manslaughter were not in this case, in my opinion . . . . I was seeking a conviction for third degree murder due to the diminished capacity. And had I discussed it with him prior to that? Yes, I had. I sat there and I said to him, prior to standing up and making an argument, this is how I'm going to argue it . . . . I also told him I thought the best way to go was this diminished capacity. I thought it was the only potential way out in this particular case was the third degree murder conviction so he could potentially get out of jail. And that's what I told him, and that's the way I proceeded.

5

that he urged Davenport to take the diminished capacity defense in light of the overwhelming evidence, and Davenport agreed to do so." *Commw. v. Davenport*, No. 4958 (Pa. Super. Ct. Nov. 17, 1998) (opinion dismissing PCRA petition). The Pennsylvania Supreme Court denied Davenport's Petition for Allowance of Appeal on April 20, 1999.

Davenport, pro se, filed a timely petition under 28 U.S.C. § 2254 in federal court on March 17, 2000, claiming ineffective assistance of counsel. On June 26, 2000, the District Court issued an Order allowing Davenport an additional 120 days to file an all-inclusive petition; Davenport submitted the new petition on October 13, 2000. On January 9, 2002, the District Court ordered counsel appointed.

The District Court adopted the Magistrate's Report and Recommendation[3] on April 14, 2005, denying Davenport's petition. *Davenport v. Vaughn*, No. 00-5316, 2005 WL 856912, *12 (E.D. Pa. April 14, 2005). The District Court found Davenport's trial counsel had communicated with Davenport about the diminished capacity defense. *Id*. at *11. ("[T]hroughout the hearing Mr. Giampietro made it clear that Mr. Davenport was informed of his options and involved in the decisionmaking process."). The District Court held Davenport's ineffectiveness of counsel claim on the diminished capacity

---

[3] On October 2, 2001, the Magistrate Judge issued a Report and Recommendation recommending denial of Davenport's petition. The District Court remanded to the Magistrate for further proceedings, and the Magistrate issued a Supplemental Report and Recommendation on October 24, 2002.

defense "entirely without merit" based on the state courts' conclusions[4] that defense counsel's testimony should be credited, and further that Davenport had not rebutted this presumption by clear and convincing evidence. *Id.* (citing *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000); 28 U.S.C. § 2254(e)(1)).

Davenport timely appealed and we granted a certificate of appealability on the following issue: "that counsel was ineffective for arguing diminished capacity without consent." Our review is plenary. *See Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) ("This court applies a plenary standard of review when a district court dismisses a habeas petition based on a review of the state court record and does not hold an evidentiary hearing . . . ."). With respect to any claim adjudicated on the merits in state court, we may grant relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the

---

[4] All of the state courts reviewing this case—the trial court and appellate court on <u>both</u> direct and PCRA review—addressed this ineffectiveness claim and found defense counsel's testimony credible. The District Court stated: "the *state courts* clearly have concluded that Mr. Giampietro's testimony is credible and should be given weight." *Davenport*, 2005 WL 856912, at *11 (emphasis added). Davenport raised the ineffectiveness claim on diminished capacity on direct and PCRA review. The Pennsylvania Superior Court (direct appeal) noted one of the questions Davenport submitted for review was "whether trial defense counsel rendered ineffective assistance of counsel in conceding that the offense was murder, where appellant's trial testimony, and his pretrial statement, would raise an issue of voluntary manslaughter." *Davenport*, 663 A.2d 246 (Pa. Super. Ct. 1995). It also stated "in his next claim of ineffectiveness, appellant argues that his trial counsel abandoned his defense of not guilty by conceding to the fact that murder was committed." *Id.*

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.

### A.

Davenport contends trial counsel's representation of him was ineffective because Davenport did not consent to a diminished capacity defense, which required a concession of guilt. To establish a claim of ineffective assistance of counsel under *Strickland*, Davenport must demonstrate his attorney's performance was deficient and that he was prejudiced by this deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). That is, he must prove counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In conducting a habeas analysis, we must afford state courts' factual findings a presumption of correctness, which the petitioner can overcome only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Weeks*, 219 F.3d at 259 ("[An] implicit factual finding is due the same highly [deferential] presumption of correctness required by § 2254(e) . . . ."). This presumption applies to the factual determinations of both state trial and appellate courts. *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996). Even if a petitioner can rebut a state court's finding of fact by clear and convincing

8

evidence, we will only grant habeas relief if the state court's factual finding was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Campbell v. Vaughn*, 209 F.3d 280, 290 (3d Cir. 2000) (holding habeas relief unwarranted when a trial court credits trial counsel's testimony and discounts the defendant's testimony).

The state trial and appellate courts on direct review implicitly found Davenport had consented to his trial counsel's use of the diminished capacity defense.[5] Both courts credited defense counsel's testimony at the post-verdict evidentiary hearing conducted on March 1, 1994. The trial court noted defense counsel "had told the defendant that he was seeking a conviction for Third Degree Murder based on diminished capacity. In furtherance of the defense, he had Dr. Allen Tepper examine the defendant." *Commw. v. Davenport*, No. 1442-46 (Phila. County Ct. C.P. March 1, 1994). The Pennsylvania Superior Court on direct review similarly determined that trial counsel had discussed this course of action with the defendant, and the defendant had agreed to it by seeing Dr. Tepper. *Davenport*, 663 A.2d 246 (Pa. Super. Ct. 1995). The Pennsylvania Superior Court held this ineffectiveness claim meritless because "the trial court properly credited

---

[5] On PCRA review, the Pennsylvania Superior Court explicitly found "Davenport's trial counsel testified that he urged Davenport to take the diminished capacity defense in light of the overwhelming evidence, and Davenport agreed to do so." *Commw. v. Davenport*, No. 4958 (Pa. Super. Ct. Nov. 17, 1998) (opinion dismissing PCRA petition).

9

the testimony of trial counsel and rejected appellant's argument" that he had not consented to the diminished capacity defense.[6] *Id.*

Davenport contends defense counsel did not explain the diminished capacity defense, nor did Davenport consent to a concession of guilt in the course of pleading this defense. A finding that Davenport agreed to the diminished capacity trial strategy would negate any claim of counsel's deficient performance. Although the state courts on direct appeal did not make an express finding that Davenport had consented to defense counsel's trial strategy, the courts did credit his testimony, in which he stated they had discussed the strategy, and not Davenport's testimony, in which he stated they had not.

We must apply a presumption of correctness to state courts' implicit factual findings. *See Weeks*, 219 F.3d at 258. The District Court did not find Davenport had met his burden to rebut this presumption by clear and convincing evidence, and we agree. *Davenport*, 2005 WL 856912, at *11. The trial court's implicit fact-finding in its denial of a Motion for New Trial, based on a credibility determination of witnesses observed by the trial court judge, was not unreasonable in light of the evidence presented. *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 339–340 (2003); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

---

[6] The Philadelphia Court of Common Pleas, in its PCRA opinion, similarly held the "defendant failed to prove his claim of counsel ineffectiveness" and presented no new claims or evidence. *Davenport,* No. 9103-1442-1446 (Phila. County Ct. C.P. Feb. 5, 1998) (opinion dismissing PCRA petition).

10

B.

Even if Davenport did not explicitly consent to trial counsel's pursuit of the diminished capacity defense or the concession of guilt during his closing argument, we do not find defense counsel's performance deficient. To succeed on an ineffective assistance of counsel claim, petitioners must overcome the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioners may rebut this presumption by "showing that no sound strategy posited by the [government] could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). Counsel's failure to obtain express consent from his client to pursue a strategy that includes a concession of guilt is not deficient performance per se. *See United States v. Nixon*, 543 U.S. 175, 188 (2004). The Court in *Nixon* held "counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent," as long as counsel informed the defendant of the strategy before he proceeded and it satisfied the *Strickland* standard.[7] *Id.* at 192.

To support finding counsel's performance deficient for not obtaining express consent to concede guilt, Davenport relies on *Brookhart v. Janis*, 384 U.S. 1, 6–7 (1966), which held counsel must obtain his client's express consent to enter a guilty plea on the

---

[7] Davenport attempts to distinguish *Nixon* on the basis that his case was not death penalty-certified, and it was commonly known Judge Richette, the trial court judge, did not give the death penalty. The prosecutor claimed this case was death certified, but the record is inconclusive on this point.

11

client's behalf. But in *Nixon*, the Court found conceding guilt during a closing or opening statement did not amount to the functional equivalent of a guilty plea, thereby distinguishing *Brookhart*, because the defendant "retained all the rights accorded a defendant during a criminal trial . . . ." *Commw. v. Cousin*, 888 A.2d 710, 721 (Pa. 2005); *see also Nixon*, 543 U.S. at 186–89 ("In contrast to *Brookhart*, there was in Nixon's case no 'truncated' proceeding . . . shorn of the need to persuade the trier 'beyond a reasonable doubt,' and of the defendant's right to confront and cross-examine witnesses.") (quoting *Brookhart*, 384 U.S. at 5–6) (internal citations omitted).[8]

Here, defense counsel pursued a reasoned trial strategy in light of the evidence available, which included Davenport's written confession to police that he killed Dickerson. The only defense strategies available to reduce the murder charge to third degree were self defense and diminished capacity. Davenport contends he had wanted to pursue self defense at trial, but defense counsel testified he had not believed that to be a viable strategy and had told Davenport so. In his trial testimony, Davenport admitted killing Dickerson, but claimed she stabbed him first and, accordingly, contended his actions were in self-defense. Davenport did not mention the stabbing in his signed police statement, nor did his girlfriend testify to any injury to Davenport beyond scratches when

---

[8] In *Nixon*, defense counsel conceded defendant's guilt in the opening statement and did not present a defense case. *Nixon*, 543 U.S. at 183. In contrast, Davenport's trial counsel presented a defense case and only acknowledged defendant's guilt during the closing statement as part of his strategy to pursue the diminished capacity defense.

recounting the night in question. Although a knife was recovered from the scene, no forensic evidence connected the knife to Davenport's alleged injury. No evidence corroborates a heat of passion defense, besides Davenport's contentions on the stand. No state court found this defense had any merit.

The state courts determined defense counsel had a reasonable basis for not pursuing this defense. *See, e.g.*, *Davenport*, No. 4958 (Pa. Super. Ct. 1997) (opinion dismissing PCRA petition). We agree with this assessment. Accordingly, the diminished capacity defense was the only other defense available to obtain the lowest possible punishment, and the trial court found "trial counsel argued strenuously [for it] during closing arguments." *Davenport*, No. 1442-46 (Phila. County Ct. C.P. March 1, 1994). We find defense counsel's pursuit of a diminished capacity defense was sound trial strategy and not deficient performance under *Strickland*.

## C.

To prevail under *Strickland*, a petitioner must prove prejudice in addition to deficiency. *Strickland*, 466 U.S. at 687. Davenport contends we should evaluate this case under *United States v. Cronic*, 466 U.S. 648 (1984), instead of *Strickland*. In *Cronic*, the Court identified a narrow exception to the application of *Strickland*'s prejudice requirement when defense counsel completely fails to engage in the adversarial process. *Id.* at 659; *see also Bell v. Cone*, 535 U.S. 685, 697 (2002). In these situations,

13

counsel's strategy is "so likely to prejudice the accused" that prejudice is presumed. *Cronic*, 466 U.S. at 658.

The Supreme Court has identified three situations in which courts should apply the *Cronic* standard of presumed prejudice. The first is when there is a "'complete denial of counsel'" at a critical stage in the trial proceedings. *Bell*, 535 U.S. at 695–96 (quoting *Cronic*, 466 U.S. at 659). Second are situations in which a petitioner is represented by counsel at trial, but counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* And third, situations at trial where counsel could not render competent assistance. *Id.*

Davenport contends the second situation applies, and "[t]rial counsel failed to subject the state's case to any real adversarial testing." But the Court in *Bell* held if counsel only fails to challenge the prosecution's case at specific points, to further a reasonable trial strategy, and not in its entirety, then *Cronic* does not apply. *Bell*, 535 U.S. at 697; *see also Haynes v. Cain*, 298 F.3d 375, 380–81 (5th Cir. 2002) ("[W]hen counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision . . . [and] has not abandoned his or her client by entirely failing to challenge the prosecution's case."). "*Cronic* is reserved only for those extreme cases in which counsel fails to present any defense." *Id.* at 381. In *Nixon*, the Court held *Strickland* applied to the situation in which

counsel made a strategic choice to concede defendant's guilt in consideration of the best outcome in the penalty phase. *Nixon*, 543 U.S. at 190–91.

Davenport's trial counsel did not fail to subject the government's case to adversarial testing, but rather pursued the only defense strategy he believed was available to obtain a more favorable trial outcome for his client. He acknowledged Davenport's guilt in the closing statement as part of the diminished capacity defense only after viewing the evidence presented at trial, including Davenport's concession in his signed police statement and trial testimony, and subjecting the government's witnesses to cross-examination. Accordingly, *Strickland*, and not *Cronic*, was the correct standard to apply in this case.

The Pennsylvania Superior Court, in its PCRA opinion, found counsel's concession did not prejudice the defendant because he "had maintained throughout the entire trial that he had committed the acts for which he was charged." *Davenport*, No. 4958 (Pa. Super. Ct. Nov. 17, 1998) (opinion dismissing PCRA petition); *see Basden v. Lee*, 290 F.3d 602, 616 (4th Cir. 2002) (finding no prejudice under *Strickland* for counsel's concession of defendant's guilt due to defendant's "full, voluntary, and detailed pretrial confession"). We do not find this unreasonable. Davenport confessed to strangling the victim and watching her die in both his signed police statement and his trial court testimony, and the medical examiner's testimony corroborated this cause of death. In light of this evidence, the state court reasonably found Davenport had failed to

establish that without the concession strategy, the trial's outcome would have been different.

III.

For the foregoing reasons, we will affirm the District Court's judgment, denying Davenport's § 2254 petition.