# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant GENE R. ROUSE III**
**United States Army, Appellant**

ARMY 20170192

Headquarters, Fort Knox
Matthew A. Calarco and John M. Bergen, Military Judges
Lieutenant Colonel James A. Bagwell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Captain Patrick G. Hoffman, JA; Captain Benjamin J. Wetherell, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Jeremy Watford, JA; Major Meghan Peters, JA (on brief).

19 March 2019

---------------------------------
OPINION OF THE COURT
---------------------------------

FEBBO, Judge:

Consent to a sexual act may be withdrawn at any time, including after the sexual act has begun. In this case, we answer the question of when continuing a sexual act after consent is withdrawn constitutes the crime of forcible sodomy. We answer this question to decide whether appellant's conviction for forcible sodomy is legally and factually sufficient when appellant's sexual partner initially consented to the sexual act, but withdrew her consent during the act when appellant tried to trick her into an orgy by ambush. Ultimately, we conclude the evidence was legally and factually sufficient to establish that appellant committed sodomy by force and without consent.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of forcible sodomy and one specification of assault consummated by a battery, in violation of Articles 125 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925 (2006 & Supp. IV 2011) and 928

ROUSE—ARMY 20170192

(2012 & Supp. I 2014).  The military judge acquitted appellant of one specification of rape by force, in violation of Article 120, UCMJ.  The military judge sentenced appellant to a bad-conduct discharge and four years of confinement.  The convening authority approved the findings and the adjudged sentence.  This case is before us for review pursuant to Article 66, UCMJ.[1]

## BACKGROUND

In 2010, appellant was assigned to a unit at Fort Bliss, Texas.  He was simultaneously involved with numerous sexual partners.  Three of these partners are relevant to appellant's conviction of forcible sodomy.

The named victim of the sodomy charge is NM.  Appellant met NM through an online dating service, and they began a sexual relationship.  While they were in a relationship, appellant asked NM if she would participate in sex with appellant and another woman.  NM told appellant she was not interested in participating in group sex.  Appellant also asked if a female friend of his could come over to observe NM and appellant engaging in anal sex.  Appellant explained his female friend was inexperienced and wanted to learn about anal sex.  Again, NM explained she had no interest in having anyone watching them engage in sexual acts.  In response, appellant stated he was "just joking."

While deployed to Iraq, appellant began communicating with KY through Facebook.  The day before appellant redeployed, KY moved to El Paso, Texas, to live with him.  During their relationship, which included later getting married, appellant and KY engaged in sexual acts with multiple other women.  One of these sexual partners was JS.  In 2010, appellant met JS on a dating website and they began a sexual relationship.  JS lived with appellant and KY and the three of them engaged in sexual acts with one another.

KY and JS knew about NM.  NM did not know appellant, KY, and JS were both sharing a residence and sharing each other sexually.

In December 2011, appellant and NM decided to rekindle their sexual relationship.  NM went to appellant's house.  She observed a woman cooking in the

---

[1] We have also considered whether appellant's conviction of assault is legally and factually sufficient and conclude it is.  We similarly considered two additional issues appellant raised on brief related to Military Rules of Evidence 404(b) and 412.  We conclude neither issue merits further discussion or relief.  We also considered the matters appellant asserted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

kitchen. Appellant claimed the woman was just a neighbor. In reality, without NM's knowledge, appellant had arranged for an attempted orgy between himself, NM, KY, and JS.

Appellant and NM went upstairs, locked the bedroom door, and engaged in consensual sexual acts to include anal sodomy. Appellant and NM took a break from their sexual acts so NM could use the bathroom that was accessible from the bedroom. When NM came back, she observed appellant texting on his phone. Appellant told NM he was texting someone at his unit about a work-related issue. In reality, he had unlocked the bedroom door and told KY and JS to come into the bedroom. Appellant and NM began to re-engage in consensual anal sex. Appellant was on top of NM as she lay on her back with her legs over his shoulders.

KY and JS opened the bedroom door and, as appellant had designed, discovered appellant and NM *in flagrante delicto*. Based on appellant's prior requests to include additional participants in his sexual escapades, NM immediately ascertained appellant orchestrated an attempted orgy by ambush.

NM told appellant to "get off" of her. She told him "no" around ten times. She pounded his chest to get him to stop. Appellant, however, pinned her to the bed and continued actively penetrating her by thrusting into her despite her protests. Appellant did not stop until NM was able to move her legs between their bodies and push him off of her. She estimated that "it was more than a few minutes" before appellant stopped penetrating her.[2]

NM was upset and immediately left the residence crying. She promptly reported the sexual assault to the El Paso Police Department (PD). El Paso PD investigated the allegations but did not pursue charges against appellant. Before civilian law enforcement spoke with appellant, KY, JS, and appellant agreed to lie to the police. They told the El Paso PD investigator that there was a misunderstanding and KY and JS had come into the bedroom by mistake to search for a phone charger.

---

[2] All three witnesses testified about this length of time. KY testified that it was "real fast" between the time they walked into the bedroom and the time NM got her foot into position and pushed appellant off of her. JS testified that appellant continued to "thrust" 10 or 12 times until NM kicked him off of her. JS also estimated it was "four minutes" before appellant stopped. Although it is not the basis on which we decide this case, we find appellant continued performing the sexual act on NM for at least thirty seconds after she emphatically withdrew consent.

In 2012, appellant and KY married and continued their polyamorous relationship with other women. In January 2014, appellant and KY had an argument during which appellant physically assaulted KY by strangling her. Around this time, U.S. Army Criminal Investigation Command (CID) began investigating sexual assault allegations made by two of appellant's other sexual partners. NM cooperated with the CID investigation and appellant was charged with the December 2011 forcible sodomy of NM.

The government's case against appellant was substantially based on the testimony and credibility of NM, KY, and JS. The defense argued that all three were jilted ex-lovers that were fabricating and exaggerating what was actually a failed attempt by appellant for consensual group sex.

## LAW AND DISCUSSION

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilty that we find correct in law and fact and determine, based on the entire record, should be affirmed. *Id*.

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Appellant asserts the evidence was factually insufficient to support his conviction for forcible sodomy. Appellant claims the testimony against him was not credible, riddled with contradictions, and fueled by his ex-lovers' biases against him. The biases and inconsistencies alleged by appellant do not undermine our confidence in appellant's convictions. We find NM, KY, and JS's testimony was credible despite their alleged motives to fabricate claims against appellant. Further, we recognize that the trial court saw and heard the witnesses and was in a "superior position" than us to judge issues of credibility. *United States v. Latimer*, 30 M.J. 554, 557 (A.C.M.R. 1990).

We have also considered whether appellant's conviction for forcible sodomy is legally and factually sufficient considering his anal sex with NM began consensually but NM withdrew her consent during the sexual act. We conclude appellant's conviction is indeed legally and factually sufficient.

4

Appellant's conviction of forcible sodomy required the government to prove appellant engaged in "unnatural carnal copulation" by force and without consent.[3] In this case, penetration is not in doubt. The issue is whether any such penetration was by force and without consent. It is clear NM initially consented to engaging in anal sex with appellant. It is equally clear—at least to us—NM withdrew her consent to continued sex when KY and JS entered the bedroom. What remains in dispute is whether appellant's actions after NM's withdrawal of consent constitute penetration by force and without consent. We conclude they did.

Clearly, there is an absolute right to withdraw consent to a sexual act—even in the middle of the very same sexual act—that is not subject to reasonable debate. The question before us is: at what point does continuation of a once-consensual sexual act, after consent to the act is withdrawn, become the crime of forcible sodomy? We have found no precedential military cases addressing this issue.[4] As such, we see this as an issue of first impression in the military.[5]

---

[3] It is well-established that the term "unnatural carnal copulation" includes penile penetration of the anus. *Manual for Courts-Martial, United States*, pt. IV ¶ 51.c (2008 ed.). While the case before us involves forcible sodomy under the law as it existed prior to 16 January 2014, we see no other relevant difference between the offense at issue in this case and the more commonly charged offense of rape by force. *See* UCMJ, art. 120(a). For this reason, we use the term "sexual act" throughout our opinion rather than the term "unnatural carnal copulation."

[4] We have found three non-binding cases that mention this specific issue in passing. *See United States v. Wilson*, No. 201700098, 2018 CCA LEXIS 451, *10 (N.M. Ct. Crim. App. 20 Sep. 2018); *United States v. Battles*, ARMY 20140399, 2017 CCA LEXIS 380, *11 (Army Ct. Crim. App. 31 May 2017); *United States v. Horne*, NMCM 91 1798, 1992 CMR LEXIS 442, *2-3 (N.M.C.M.R. 13 Apr. 1992). The distinct but analogous issue of advanced consent was addressed by our superior court in *United States v. Prather*, 69 M.J. 338, 343 (C.A.A.F. 2011). In *Prather*, our superior court found consent given before a victim became substantially incapacitated no longer continues to be valid throughout the period of incapacity.

[5] For an extensive review of the issue of withdrawal of consent, *see* Amanda O. David, Comment, *Clarifying the Issue of Consent: The Evolution of Post-Penetration Rape*, 34 Stetson L. Rev. 729 (2005). Ms. David concludes, as of 2005, the following states expressly addressed the issue of "post-penetration rape:" Alaska, California, Connecticut, Kansas, Maine, Maryland, North Carolina, and South Dakota. An additional two—Minnesota and New Mexico—upheld rape convictions after procedural challenges based on the trial court refusing to instruct the jury on "post-penetration rape." *Id*. at n.125.

We conclude an accused may be convicted under Article 125 if he or she uses force to continue commission of an ongoing sexual act after consent to such sexual act has been withdrawn. The crucial question is whether an accused continued the sexual act by the use of force after consent was withdrawn. In this case, appellant did.

At the time of appellant's offense, the crime of forcible sodomy required proof of a sexual act amounting to "unnatural carnal copulation" by force and without consent. As several state courts have addressed the withdrawal of consent under similar statutes, we begin by surveying relevant civilian cases. Next, we consider the language of Article 125, as it relates to force and "penetration." Finally, we apply our conclusions of law to the facts of this case.

### A. Civilian Cases

A majority of the jurisdictions we have surveyed agree that consent to a sexual act may be withdrawn at any time, including after the sexual act has begun.[6] One notable decision to this effect came from the Alaska Court of Appeals in *McGill v. State*, 18 P.3d 77 (Alaska Ct. App. 2001). In *McGill*, the court rejected the argument that consent to sexual penetration may not be withdrawn once the penetrative act has begun. Mr. McGill had argued that appellate courts in three other states—North Carolina in *Way*, Maryland in *Battle*, and California in *Vela*[7]— had adopted the rule that the act of initial penetration was the moment of criminal conduct, and that once penetration had begun lawfully, it could not become unlawful

---

[6] While our survey primarily relies on the decisions of state courts, some federal civilian courts have addressed similar issues, at least in passing. *See, e.g., United States v. Lanning*, 723 F.3d 476, n.7 (4th Cir. 2013) ("initiation of sexual activity does not deprive a person of the right to withdraw consent"); *Davenport v. Vaughn*, 2005 U.S. Dist. LEXIS 6407, *13, *36-37 (E.D. Pa. 14 Apr. 2005), *aff'd*, 215 Fed. Appx. 175 (3d Cir. 2007) (rejecting the argument that "only the initial act of penetration counts as penetration, so a withdrawal of consent after sexual assault has begun is not rape unless the man withdraws and then 'penetrates' again").

[7] *State v. Way*, 254 S.E.2d 760, 762 (N.C. 1979) ("if actual penetration is accomplished with the women's consent, the accused is not guilty of rape, although he may be guilty of another crime because of his subsequent actions"); *Battle v. State*, 414 A.2d 1266, 1270 (Md. 1980) ("ordinarily if a [woman] consents to penetration and withdraws consent following penetration, there is no rape"); and *People v. Vela*, 172 Cal. App. 3d 237, 242 (Cal. Ct. App. 1985) ("if consent is given at the moment of penetration, that act of intercourse will be shielded from being rape even if consent is later withdrawn during the act").

by subsequent withdrawal of consent. *Id.* at 82-83. The Alaska Court of Appeals found the cases cited by Mr. McGill unpersuasive and criticized those cases' "reasoning, or lack of it." *Id.* at 83. The *McGill* court found the trio of contrary cases relied on "archaic and outmoded social conventions." *Id.* at 84. We agree.

Similarly, the Appellate Court of Connecticut rejected the reasoning of *Vela* as "archaic and unrealistic." *State v. Siering*, 644 A.2d 958, 963 (Conn. App. Ct. 1994). The *Siering* court also adopted the rule that consent to a sexual act may be withdrawn at any time, and the use of force to compel a victim to continue a sexual act after consent is withdrawn is an offense. *Id.*

Since *McGill* and *Siering* were decided, courts in both Maryland and California have changed course from the decisions criticized in *McGill*. The Supreme Court of California functionally overruled *Vela* in *In re John Z*, 60 P.3d 183, 188 (Cal. 2003). Similarly, the Court of Appeals of Maryland rejected the language in *Battle* that suggested a person cannot withdraw consent after a sexual act has begun. *State v. Baby*, 946 A.2d 463, 473-78 (Md. 2008).

The Supreme Court of Maine addressed a closely related issue in *State v. Robinson*, 496 A.2d 1067, 1071 (Me. 1985). After surveying cases describing how rape is complete upon penetration—by force or compulsion—"however slight," the court explained: "The fact that the overwhelming bulk of rape cases involve the question whether the threshold entry of the female sex organ occurred cannot blink the fact that in either everyday or legal parlance any continuing presence of the male sex organ in the female organ constitutes sexual intercourse." *Id.* at n.2. We agree with Maine's high court and find its analysis particularly relevant considering our own law requires penetration "however slight." Penetration may be ongoing, it does not necessarily cease after the initial moment when the slightest penetration is made.

In *State v. Flynn*, the Supreme Court of Kansas decided the associated issue of when continued penetration after withdrawal of consent constitutes the crime of rape. 329 P.3d 429 (Kan. 2014). In *Flynn*, the court held the crime of rape was established when consent is withdrawn as to an initially consensual sexual act and one party nevertheless continues the sexual act "by use of force or fear." *Id.* at 438.

The analysis in *McGill*, *Siering*, *Robinson*, and *Flynn* is consistent with a majority of the jurisdictions we have surveyed, and with the language of the UCMJ.

## B. The Statutory Language

The plain language of the UCMJ is consistent with those civilian cases that have concluded "penetration," in the legal sense, continues so long as the penetrative sexual act continues. Article 125 states, "penetration, however slight is sufficient to complete the offense." For much the same reasons articulated in

7

*Robinson* and *Siering*, we conclude "penetration" includes *but is not limited to* the initial, "slight" breach of a bodily opening. "Penetration" is a noun describing the arrangement wherein one object breaches the plane of another. Penetration exists so long as the breach exists.

We hold that an accused may be convicted under Article 125 if he or she uses force to continue committing an ongoing sexual act after consent to such sexual act is withdrawn. When an offense requires proof that a sexual act was accomplished by force and without consent, the offense is complete when an accused uses force to continue the sexual act after consent is withdrawn.[8]

### C. Application to this Case

Appellant continued to penetrate NM as long as his penis was inside her. While appellant was penetrating her, NM withdrew her consent to the penetrative act. Instead of removing himself from her body, appellant used force to pin NM to the bed and continue penetrating her by thrusting himself inside her. We conclude appellant's ongoing penetration, accomplished by force, after NM withdrew consent to the sexual act, constituted the crime of forcible sodomy.

Under different circumstances, there could be a claim that verbal or nonverbal communications withdrawing consent during a consensual sexual act may not have been clearly conveyed and understood.[9] Both the emphatic nature of NM's withdrawal of consent and appellant's actions before and after the forcible sodomy, however, undermine any claim of an honest and reasonable mistake of fact in this

---

[8] Our holding applies to the offense of forcible sodomy as it existed prior to 16 January 2014, when the text of Article 125 changed to require "unnatural carnal copulation . . . by force *or* without the consent of the other person." UCMJ art. 125(a) (2012 & Supp. I 2014) (emphasis added). We see no reason, however, to distinguish between the offense of forcible sodomy presented to us in this case, and the more commonly charged offense of rape by force. *See* UCMJ art. 120(a). We also note that an analogous principle applies to the offense of sexual assault by bodily harm. Both common sense and the law dictate that once consent to a sexual act is withdrawn, the sexual act must cease.

[9] An accused who maintained an honest and reasonable mistake as to the continued consent of the other party is not criminally culpable for continuing the sexual act. *See* Rule for Courts-Martial 916(j). Factors a court-martial may use to determine whether an accused had an honest and reasonable mistake of fact as to continued consent will vary based on the facts and circumstances of each case.

case.[10] There was no ambiguity in NM's conditions for sexual activity or her withdrawal of consent. NM consented to sex with appellant in private and behind closed doors. Appellant knew NM's conditions in advance and knew NM would consent neither to sex with other individuals nor to other individuals viewing her sex with appellant. Nevertheless, appellant arranged for KY and JS to enter the bedroom, knowing NM would not consent to continued sexual acts in their presence. NM's resulting withdrawal of consent was immediate, unequivocal, and emphatic. Appellant could not have had an honest and reasonable mistake as to NM's withdrawal of consent. Regardless, appellant used force to continue performing the sexual act on NM. After NM withdrew consent to the sexual act, appellant's crime was complete when he used force to pin NM down and continue the sexual act against her will. We are convinced of appellant's guilt beyond any reasonable doubt.

---

[10] We find no inconsistency between our conclusions in this case regarding the defense of an honest and reasonable mistake of fact as to consent and our recent decision in *United States v. Peebles*, 78 M.J. 658 (Army Ct. Crim. App. 2019), applying the rule articulated in *Elonis* and *Gifford*, to require a reckless disregard for consent. *See generally United States v. Elonis*, 135 S.Ct. 2001 (2014); *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016). Our holding in *Peebles* relates to cases alleging sexual assault where the alleged sexual act and bodily harm were one and the same. In such situations, consent—*and nothing else*—separates innocent from wrongful conduct. In this case, as in all cases alleging a sexual act by force, it is not innocent conduct to accomplish the sexual act *by force*. As defined under the UCMJ at the time of appellant's offense, "force" meant "physical violence, strength, power, or restraint applied to another person, sufficient that the other person could not avoid or escape the sexual conduct." UCMJ art. 120(t)(5)(C) (2006 & Supp. IV 2011). Prior to the 2007 changes to Article 120, our superior court defined force similarly: "Actual force is physical force used to overcome a victim's lack of consent. Actual force requires 'more than the incidental force involved in penetration.'" *United States v. Leak*, 61 M.J. 234, 246 (C.A.A.F. 2005) (quoting *United States v. Bonano-Torres*, 31 M.J. 175, 179 (C.M.A. 1990)). Military courts also recognized the element of force could be accomplished through constructive force. "Constructive force may be shown by proof of a coercive atmosphere that includes, for example, threats to injure others or statements that resistance would be futile." *Id.* (quoting *United States v. Simpson*, 58 M.J. 368, 377 (C.A.A.F. 2003)). While sexual acts are ordinarily innocent, *forcible* sexual acts—whether the force was actual or constructive—are not.

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court