In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-1535

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FREEMAN HOLMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 99 CR 62—**William C. Lee**, *Chief Judge.*

ARGUED FEBRUARY 13, 2002—DECIDED DECEMBER 16, 2002

Before COFFEY, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Freeman Holman, the defendant in this direct appeal, claims that he received ineffective assistance of counsel because during trial his attorney conceded guilt to one of the four counts he faced. He also alleges that the district judge erred when calculating his sentence. We find that he was not deprived of his Sixth Amendment right to the effective assistance of counsel and that no reversible errors were made during his sentencing.

## I. BACKGROUND

On July 31, 1999, Holman was arrested on his way to meet Joyce Lawson, a police informant who arranged to

meet Holman and purchase a small quantity of crack co-
caine from him. As a result, he was indicted on one count
of knowing and intentional possession of cocaine base
with intent to distribute in violation of 21 U.S.C. § 841(a)(1)
(Count I). A few months later, Holman was arrested when
officers found a revolver and crack cocaine in his car. A
superceding indictment added three charges based on his
second arrest—possession of cocaine base with intent to
distribute, possession of a firearm and ammunition by a
felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2),
and carrying a firearm during and in relation to a drug
trafficking crime in violation of 18 U.S.C. § 924(c)(1)
(Counts II-IV). Holman was found guilty on all counts by
a jury after a two-day trial, sentenced to 248 months'
imprisonment, and now appeals.

## II.  ANALYSIS

### A.  Ineffective Assistance of Counsel

Holman claims he was denied effective assistance of
counsel because his attorney conceded at trial that Holman
was guilty of Count I. His challenge is based on the famil-
iar standard of *Strickland v. Washington*, 466 U.S. 668
(1984), which requires that defendants show that their
attorney's performance was deficient and that they suffered
prejudice as a result of this deficient performance. *Id.* at
688, 692.[1] Such claims are mixed questions of law and fact

---

[1]  It is possible to argue that by conceding his client's guilt, Hol-
man's attorney "fail[ed] to subject the prosecution's case to ad-
versarial testing," something found per se prejudicial in *United
States v. Cronic*, 466 U.S. 648, 659 (1982). However, as the Su-
preme Court recently re-emphasized in *Bell v. Cone*, 535 U.S. 686,
122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002), *Cronic* only applies
if counsel fails to contest *any* portion of the prosecution's case; if
(continued...)

that we review de novo. *United States v. Shurki*, 207 F.3d 412, 418 (7th Cir. 2000). *Strickland* claims are usually discussed in writs of habeas corpus, but we review them on direct appeal when the defendant's claim can be fully evaluated based only on the record below, *id.* at 418, and not extrinsic evidence. *United States v. Goodwin*, 202 F.3d 969, 973 (7th Cir. 2000); *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991).

### 1. Deficient Performance Under *Strickland*

Holman must describe "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" to show that his counsel was performing deficiently. *Strickland*, 466 U.S. at 687. The evaluative standard we hold attorneys to in this regard is "simply reasonableness under prevailing professional norms." *Id.* at 688. When evaluating an attorney's conduct, our review is "highly deferential," with the underlying assumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Whether something is reasonable or not is based on the facts of the particular case, viewed at the time of counsel's conduct. *Id.* at 690.

---

[1] (...continued)
counsel mounts a partial defense, *Strickland* is the more appropriate test. *See id.*, 122 S. Ct. at 1851; *Haynes v. Cain*, 298 F.3d 375 (5th Cir. 2002) (en banc), *petition for certiorari filed*, 71 U.S.L.W. 3319 (U.S. Oct. 10, 2002) (No. 02-602); *see also Earl Wiley v. Sowders*, 647 F.2d 642 (6th Cir. 1981) (conceding guilt to first-degree burglary *and* being a persistent felony offender); *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991) (conceding guilt to one count of bank robbery); *cf. Scarpa v. DuBois*, 38 F.3d 1, 12-14 (1st Cir. 1994) (collecting cases).

### a) Trial strategy

Holman's attorney began his opening statement by acknowledging that "on July 31st, 1999, Freeman Holman readily admits that he had cocaine in his pocket." He then explained:

> We're not going to sit here and say, oh, no, he didn't have it, because he did. He had the point six eight or nearly point seven grams of the cocaine, point seven gram [sic] of cocaine crack base in his pocket. We are not going to attempt to deny that in any way, because that is the truth.

During the presentation of evidence, Holman's attorney limited his cross-examination of the prosecution's witnesses to issues raised in Counts II-IV and did not ask any questions regarding Count I. Similarly, when presenting defense witnesses (including Holman), he avoided any discussion of the events surrounding Count I and only asked questions relating to Counts II-IV. During closing argument, Holman's attorney not only conceded that his client possessed drugs as alleged in Count I, but told the jury how to fill out the verdict form, saying:

> [W]hen you go back to the Jury room we want you to look for Count I and Verdict Form 1 and where it says less than five grams, put an "X" there, date it, and sign it, because that's what the evidence showed. He possessed point six eight grams of cocaine. And as the evidence went in, it certainly appeared that he was going to deliver it to Joyce Lawson. No problem with that, because that's the truth.

Though an unusual defense strategy, we have held that conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy which, by itself, does not rise to the level of deficient performance. *See United States v.*

*Wilks*, 46 F.3d 640, 644 (7th Cir. 1995); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991); *United States v. Simone*, 931 F.2d 1186, 1195 (7th Cir. 1991); *see also Anderson v. Calderon*, 232 F.3d 1053 (9th Cir. 2000); *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995). Conceding an indefensible charge is thought to build credibility with a jury by acknowledging the overwhelming evidence of guilt for that particular charge, creating goodwill and trust that can be applied towards arguments attacking the remaining charges. *See Simone*, 931 F.2d at 1196 ("[W]hen the admissions concern only some of the charges to be proven, or when they do not actually concede guilt, counsel's concessions have been treated as tactical retreats and deemed to be effective assistance."); *Wilks*, 46 F.3d at 644 ("In conceding Wilks's guilt with respect to the one ounce transaction [but not a different transaction involving larger drug quantities], counsel lent credibility to his argument that Wilks was only a small fish in the drug world."); *see also Calderon*, 232 F.3d at 1089.

Here, while conceding Count I and its underlying facts, *i.e.*, that on July 31, 1999, his client possessed less than a gram of cocaine base and intended to sell it to Lawson, Holman's attorney vigorously cross-examined the prosecution's witnesses regarding Counts II-IV, focusing on gaps in the prosecution's evidence.[2] Right after he conceded his client's guilt on Count I, Holman's attorney told the jury "[w]hat we don't want are convictions on the other three charges." He then described the weaknesses in the prosecution's case, including the possibility that evidence was planted in Holman's car or fabricated, and reiterated his client's defense to Counts II-IV. This deci-

---

[2] Count I carried no statutory mandatory minimum sentence under 28 U.S.C. § 841 since the amount in question was less than a gram. Counts II-IV, on the other hand, carried statutorily required minimum sentences.

sion to emphasize the defense against Counts II-IV while conceding guilt on Count I was a coherent trial strategy that, by itself, was not deficient. *See Wilks*, 46 F.3d at 644; *Simone*, 931 F.2d at 1197; *see also Williamson*, 53 F.3d at 1511-12.

### b) *Client's consent*

While we have concluded that conceding guilt to one count of a multi-count indictment is a valid defense strategy, the manner of its execution in this case greatly concerns us. *Strickland* imposes few requirements on attorneys, but one it specifically enumerates is "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. Such consultation is an ethical cornerstone of the legal profession. *See* MODEL RULE OF PROF'L CONDUCT R. 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); IND. PROF'L CONDUCT R. 1.2(a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation, . . . and shall consult with the client as to the means by which they are to be pursued.").

While we and our sister courts have approved of the strategy that Holman complains of, there has usually been evidence in the record of a client's consent to the strategy, *see*, *e.g.*, *Wilks*, 46 F.3d at 643 (defendant indicated to judge that he was satisfied with his attorney's performance at the conclusion of evidence), or later ratification of the strategy. *See*, *e.g.*, *Simone*, 931 F.2d at 1196 n.13 (defendant's letter sent to trial judge post-trial suggested that he would have conceded more than what his attorney actually admitted).

Here, unlike other cases, we have no indication from the trial or sentencing transcripts whether Holman's attorney had his client's consent to pursue such a strategy. Nor do we have post-trial evidence of consultation or consent. The only evidence of Holman's opinions regarding his attorney's conduct is a reference during the sentencing hearing to a letter that Holman sent to the Indiana Supreme Court Disciplinary Commission after his trial. While the contents of the letter are not known, we surmise that Holman considered his attorney's behavior egregious enough to warrant disciplinary action. During the hearing, Holman's attorney told the court that he received a response letter from the Indiana Disciplinary Commission stating that he had done nothing wrong. While it is possible that Holman's letter professed a valid complaint, these letters can also be expressions of "sour grapes" that result from high-risk trial strategies that fail. Without the letter itself in the record, and left with only a reference to it, we cannot consider the letter an expression of Holman's disapproval of his attorney's conduct for purposes of establishing lack of consent, given the possibility that the letter could have presented a frivolous claim, and taking into account Holman's own failure to attach any probative weight to the letter.

Without any indication as to whether Holman agreed to, dissented from, or even was aware of his attorney's plan to concede guilt, the question is whether it must be shown that Holman consented to such a strategy. As we said in *Simone*, "[w]e do not approve of a defense counsel's deliberate, explicit admission that a jury should find his client guilty of a charge in the absence of any suggestion that the defendant concurred in the decision to proceed in such a manner." 931 F.2d at 1197; *see also Felker v. Thomas*, 52 F.3d 907, 911 (11th Cir. 1995) ("[T]rial counsel may not *concede* the guilt of a defendant who has pleaded not guilty, at least not without the defen-

dant's consent. That is true enough as to the guilt stage.") (emphasis added).[3]

We draw guidance from a pair of Sixth Circuit cases involving Earl and Elmer Wiley. The Wileys were on trial for burglary and during closing argument, Earl Wiley's attorney (speaking on behalf of both brothers), told the jury

> [U]nfortunately for these two men that you see here today, they are guilty. They're guilty as charged by the Commonwealth's Attorneys's office . . . . Ladies and gentlemen of the jury, [the prosecutor] has proved to you beyond a reasonable doubt that these gentlemen are guilty of this crime. We don't have stars in our eyes, and we never have. They're guilty.

*Earl Wiley v. Sowders*, 647 F.2d 642, 645 (6th Cir. 1981). Both brothers were convicted on all counts and brought separate habeas corpus petitions alleging ineffective assistance of counsel.

Reviewing the habeas petitions separately, the Sixth Circuit found no indication as to whether or not Earl

---

[3] The Fifth Circuit found differently in *Haynes*, where a defendant on trial for first-degree murder in Louisiana objected on the record to the judge (but outside the presence of the jury) to his attorney's concession to guilt of second-degree murder. In his federal habeas petition, Haynes argued that this amounted to an impermissible concession under *Cronic*. The Fifth Circuit held that *Strickland* was the proper standard, then bypassed the issue of consent, finding that this was a suitable tactic for such a serious crime, since it hopefully prevented the jury from finding Haynes eligible for the death penalty. *See* 298 F.3d at 382. The court also found that Haynes was not prejudiced by the defense counsel's concession, given that it spared him from death, and reversed the panel's grant of Haynes's habeas corpus petition. *See id.* at 383.

Wiley's lawyer conferred with his client about conceding guilt (as in Holman's case), and held that Earl Wiley "was deprived of effective assistance of counsel when his own lawyer admitted his client's guilt, without first obtaining his client's consent to this strategy." *Id.* It went on to find (though the case pre-dates *Strickland*) that the evidence against the Wileys was very circumstantial (*i.e.*, in *Strickland* parlance, that Earl Wiley was prejudiced by his attorney's concession), and granted Earl Wiley's petition. On the other hand, Elmer Wiley's attorney submitted an affidavit as part of the habeas corpus proceedings stating that Elmer discussed the concession strategy with his attorneys and that he consented to it. *Elmer Wiley v. Sowders*, 669 F.2d 386, 389 (6th Cir. 1982). Since Elmer's consent was in dispute, the Sixth Circuit remanded the petition to the district court to determine whether Elmer Wiley in fact consented to the trial strategy. *See id.* It also noted "that an on-the-record inquiry by the trial court to determine whether a criminal defendant has consented to an admission of guilt during closing argument represents the preferred practice. But we did not hold in [Earl] *Wiley*, and we do not hold now, that due process requires such a practice." *Id.*

We agree with the Sixth Circuit that obtaining a defendant's consent on the record in open court is the preferred method of forestalling any issues of consent that could come up later on appeal, *see Elmer Wiley*, 669 F.2d at 389; *Earl Wiley*, 647 F.2d at 650. We also agree that other methods, such as an affidavit from the defendant describing his discussions with his attorney and consent to the strategy, could work just as well. *See, e.g.*, *United States v. Agee*, 83 F.3d 882, 886 (7th Cir. 1996) ("[S]pecific dialogue with the judge is not a necessary prerequisite to a valid waiver of appeal [when pleading guilty] if there is other evidence in the record demonstrating a knowing and voluntary waiver."). Given the importance of the constitu-

tional rights implicated when guilt is conceded and the ethical obligations of attorneys to consult with their clients, we also agree with the Sixth Circuit's conclusion in *Earl Wiley* that an attorney's concession of a client's guilt without any indication of the client's consent to the strategy is deficient conduct for *Strickland* purposes.[4]

Although Holman does not specifically articulate his appeal based on Rule 11, we think that his counsel's deficient performance was based on a violation of Rule 11's procedures. Though the concession of guilt was made during trial and not before, Holman's counsel essentially gave up the same constitutional rights that Holman would have relinquished had he plead guilty to Count I before trial.

As outlined in *Boykin v. Alabama*, 395 U.S. 238 (1969), pleading guilty before trial implicates the privilege against self-incrimination, the right to trial by jury, and the right to be able to confront one's accusers. *See id.* at 243. By conceding guilt to Count I at the beginning of trial, Holman's attorney bypassed all these rights on behalf of his client: he admitted to those facts that were the elements of Count I; the jury was never given a chance to render a verdict on Count I based on an adversarial proceeding; and during cross-examination of the prosecution's witnesses, Holman's attorney did not ask any questions regarding Count I.

This was not a situation where the concession was made at the very end of trial, where the attorney realized after the close of evidence that there was no hope of a

---

[4] Because this is a direct appeal and not a review of a habeas corpus petition, we do not have the option of remanding to the district court to determine whether or not Holman in fact consented or not to his attorney's strategy. *See Elmer Wiley*, 669 F.2d at 389.

favorable verdict and that conceding guilt to one charge would hopefully preserve some credibility for the defense's arguments opposing the other counts. Rather, Holman's attorney decided from the very beginning that Count I was not worth fighting over and relinquished those constitutional rights of his client which Rule 11 was designed to protect. *See Boykin*, 395 U.S. at 243 n.5; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Here, Holman's rights are protected by Rule 11's extensive procedures, which distinguishes his situation from *United States v. Cooper*, 243 F.3d 411 (7th Cir. 2001), where we held that defendants must show that they disapproved of their attorney's waiver of their client's right to cross-examine a witness in order to pursue a Rule 52(b) appeal based on the alleged waiver without consent. *See id.* at 418.[5]

Most recently, in *Taylor v. United States*, we decided that it was not necessary for a defendant who chooses not to testify to make such a waiver on the record. 287 F.3d 658, 661 (7th Cir. 2002). However, in *Taylor*, actual consent was not in doubt—the attorney and defendant discussed the decision and the defendant decided to not testify. *See id.* at 662. *Taylor*'s concern was with the "undue formality that might undermine confidence" between an attorney and his client. We noted that "[p]erhaps a statute or rule could require warnings and waivers despite these costs, but no such statute or rule is on the books." *Id.* In this case, we have Rule 11(d), which directs courts to "not accept a plea of guilty or nolo contendre without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result

---

[5] A similar showing of consent is also required when defendants waive their right to appeal. *See United States v. Robinson*, 8 F.3d 418, 423-25 (7th Cir. 1993).

of force or threats or of promises apart from a plea agreement." *See United States v. Krilich*, 159 F.3d 1020, 1026 (7th Cir. 1998) ("A waiver is voluntary in the absence of coercion, and is knowing if made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.") (citations omitted). Our concern is not over a ritualistic incantation in open court, but rather that the decision to concede guilt is made voluntarily by the defendant and that the defendant ultimately decides which strategy to pursue. *See United States v. Wooley*, 123 F.3d 627, 632 (7th Cir. 1997).

We consider counsel's conduct deficient in this case because there is no evidence of a defendant's consent to a concession of guilt; to think otherwise would leave open a side door that would allow attorneys to abandon their clients. Rule 11 ensures that a guilty plea is made freely and knowingly, but if a defendant pleads not guilty, he enjoys no protection against an appeal to the jury to find him guilty. A similar side door—stipulating without a defendant's prior consent to facts which prove the defendant's guilt despite a not guilty plea—has long been closed. *See United States v. Franzen*, 668 F.2d 933, 941 (7th Cir. 1982) ("[I]t has long been the law of this circuit that counsel may not stipulate to facts establishing the guilt of the accused without the defendant's consent.") (citing *Achtien v. Dowd*, 117 F.2d 989, 993-94 (7th Cir. 1941)). Closing off this loophole in our jurisprudence safeguards against a very uncommon, but nevertheless worrisome, course of events.[6]

---

[6] As we have noted, we are constrained by the procedural posture of this case to only look at the trial record, in contrast to habeas corpus cases where we have a larger record to draw from and the opportunity to remand for more evidentiary hearings. *See United States v. Asubonteng*, 895 F.2d 424, 428 (7th Cir. 1990).

(continued...)

Notwithstanding our finding that Holman's attorney performed deficiently, we affirm Holman's conviction, because he suffered no prejudice as a result of his attorney's conduct.

### 2. Prejudice Under *Strickland*

While we find that Holman's attorney's conduct was deficient, we have determined that Holman suffered no prejudice as a result. Holman would have been prejudiced if there was "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Though Holman's attorney conducted only cursory cross-examination of the prosecution's witnesses and did not call any witnesses to rebut the prosecution's case regarding Count I, it is difficult to imagine how he could have mounted an effective defense that would have challenged either Holman's possession of the cocaine or his intent to sell it to Lawson. According to Lawson's testimony and that of Tracy Broxon of the Fort Wayne Police Department, Lawson called Holman and told him she wanted to buy some crack from him. Holman told her to go to a certain gas station and call him for further instructions. Accompanied by Broxon and two other officers, Lawson went to the gas station as directed and called Holman again.

---

[6] (...continued)

Having indications of consent to a concession strategy appear on the record also helps prevent defendants from hiding their consultations with their attorneys behind the shield of direct appeal instead of having them come to light in the fuller investigative process of habeas corpus proceedings. *See Agee*, 83 F.3d 886 n.5; *Robinson*, 8 F.3d at 425.

Holman answered the phone and told her he was coming outside to meet her. When Holman was seen leaving a hotel across the street approaching Lawson, police officers arrested him and found the cocaine.

While his attorney relentlessly pursued the idea that the police planted cocaine on Holman and in his car when they arrested him the second time, there is no indication that this strategy was feasible for Count I. In addition, Holman's intent to sell the cocaine to Lawson would be very difficult to refute, since he did not leave the hotel until Lawson called and asked that the cocaine be delivered. We have no evidence of improper investigative techniques on the part of the police, nor do we have testimony from Holman that would undermine the government's case. It is possible that Holman could argue that the concession of guilt to the first cocaine possession count tainted him, making the jury predisposed to thinking of him as a drug dealer when they considered the other counts, but the weight of the evidence suggests that this is a dubious argument at best.

We find, in applying the prejudice prong of *Strickland*, that the strategy used by Holman's attorney regarding Count I did not have a reasonable probability of affecting the trial's outcome, *see Strickland*, 466 U.S. at 695; *Simone*, 931 F.2d at 1196, and affirm his conviction.

B.  Sentencing Issues

Holman raises three arguments related to his sentencing. First, he argues that a conflict of interest existed between him and his trial counsel during the sentencing proceeding as a result of his letter to the Indiana Supreme Court Disciplinary Commission. Such a conflict would be a violation of the Sixth Amendment, entitling Holman to a new trial. *Strickland*, 466 U.S. at 693; *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). To prevail on this

claim, Holman must show that his attorney possessed an actual conflict of interest with his client and that his performance was adversely affected because of that conflict. *See Stoia v. United States*, 109 F.3d 392, 395 (7th Cir. 1997). This issue, as with the *Strickland* claim above, is a mixed question of law and fact that we review de novo. *Spreitzer v. Peters*, 114 F.3d 1435 (7th Cir. 1997).

The fact that Holman initiated a disciplinary inquiry against his attorney is not enough to establish an actual conflict of interest. An actual conflict exists if an attorney is torn between two different interests. *See Stoia*, 109 F.3d at 395. Once again, Holman must demonstrate that he was prejudiced by actions stemming from the alleged conflict. *See Cates v. Superintendent, Indiana Youth Center*, 981 F.2d 949, 955 (7th Cir. 1992). As we explain below, we do not find that he was prejudiced by any of the alleged missteps committed by either his attorney or the court during his sentencing hearing. In addition, we agree with the Fourth Circuit that allowing conflicts of interest to be established solely by appealing to disciplinary authorities, without knowing the substance of the complaint, would encourage filing of frivolous claims by defendants for purposes of delay. *See United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993). Left without an actual conflict, Holman's conflict of interest claim fails.

Second, Holman argues that the level used to calculate his sentence under the Sentencing Guidelines was improperly based on facts not raised at trial. Since he did not raise these objections during his sentencing hearing, we review for plain error. *United States v. Davis*, 15 F.3d 1393, 1406-07 (7th Cir. 1994). He suggests that we should expand our reading of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), so that *any* fact that enhances a sentence must be charged in an indictment *and* proven beyond a reasonable doubt, whether or not the sentence exceeds the statutory maximum. We have rejected similar argu-

ments many times, *see*, *e.g.*, *United States v. Bjorkman*, 270 F.3d 482, 492 (7th Cir. 2001), and again decline to expand *Apprendi*. Because the statutory maximum sentence for possession of cocaine base, without regard to quantity, is 240 months and Holman was sentenced to 188 months for these offenses, *Apprendi* does not apply and we uphold his sentence. *See Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000).

Holman's final claim is that the trial judge failed to make proper findings when imposing a two-level enhancement for obstruction of justice under Sentencing Guideline § 3C1.1. His attorney objected to the general principle of the enhancement, but did not make any objection to the findings of fact the judge made during the sentencing hearing, so our review is for plain error. *See United States v. Danser*, 270 F.3d 451, 454 (7th Cir. 2001). Though we agree that more specific findings as to which of Holman's statements the court considered untruthful would have been preferable, we have held that separate findings of fact regarding each element of perjury are not strictly necessary to uphold an obstruction of justice enhancement under § 3C1.1. As long as the trial court determined that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt, that is sufficient. *See United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001). Here, the trial court found that Holman lied when he said that drugs were planted on him and/or in his car. We consider this sufficient to describe a "failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case," *United States v. Dunnigan,* 507 U.S. 87, 95 (1993), and therefore affirm Holman's sentence.

## III.  CONCLUSION

For these reasons we AFFIRM Freeman Holman's conviction and sentence.

A true Copy:

     Teste:

                               _____
                               *Clerk of the United States Court of*
                                  *Appeals for the Seventh Circuit*