2025 IL App (1st) 231982-U

No. 1-23-1982

Filed September 3, 2025

Third Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 10452 |
| | ) | |
| VALENTIN CASAS, | ) | Honorable |
| | ) | Mark W. Martin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1      *Held*: Convictions affirmed over defendant's claim of ineffective assistance of counsel.

¶ 2      Following a bench trial, Valentin Casas[1] was convicted of aggravated battery of a police officer and driving with a revoked license. He was sentenced to concurrent prison terms of five years and two years, respectively. On appeal, Casas argues he was deprived of the effective assistance of counsel. We affirm.[2]

---

[1]Appellant's brief reports that his first name is Valentino, but he uses Valentin for consistency with the trial record.

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                    I. BACKGROUND

¶ 4       Casas was charged with four counts of aggravated driving under the influence (DUI), two counts of aggravated battery of a peace officer, one count of criminal damage to state supported property, and two counts of driving on a revoked license. The State proceeded to trial on all nine counts.

¶ 5       In opening statements, defense counsel stated:

"We believe that the State will be utterly [*sic*] to prove beyond a reasonable doubt that Mr. Casas was, in fact, in control of the vehicle *** he was actually parked in a parking lot and not driving the vehicle. Anything subsequent to that, *** we believe that they will also be unable to prove beyond a reasonable doubt."

¶ 6       Schiller Park Police Sgt. Chernikovich[3] testified he was driving westbound on Irving Park Road on the night of June 13, 2021, when he received a radio dispatch report of a possible impaired driver in a black Chevrolet Silverado. Moments later, a vehicle matching that description passed him, travelling in the opposite direction. The officer made a U-turn and followed. Upon observing the vehicle straddling the lane line for a block, the officer activated his emergency lights and stopped the vehicle. While Sgt. Chernikovich walked toward the vehicle, Casas exited from the driver's side. A woman, seated in the passenger seat, was the only other occupant.

¶ 7       The officer asked Casas for his driver's license and proof of insurance. Casas stated he needed to use the restroom and began removing his shoes and pants. Sgt. Chernikovich told him to stop. After being asked for his driver's license again, Casas replied that he did not have one. Casas gave his name and date of birth, however, which Sgt. Chernikovich entered in the Law

---

[3]None of the officers who testified gave their first name.

Enforcement Agencies Data System (LEADS). The query revealed Casas's driver's license had been revoked for prior DUI convictions.

¶ 8        Sgt. Chernikovich observed that Casas's eyes were bloodshot and glassy, and his breath smelled of alcohol. In addition, Casas exhibited poor balance and swayed as he stood. When asked if he had been drinking, Casas responded, "one cerveza." Several empty beer bottles were visible inside of Casas's vehicle.

¶ 9        On cross examination, defense counsel asked Sgt. Chernikovich whether, contrary to his direct testimony, he searched for Casas's vehicle after receiving the dispatch and located it parked in a parking lot with the engine off. The officer responded, "That is not true." Later, defense counsel asked Sgt. Chernikovich whether he had learned that Casas's vehicle had been parked for 20 minutes before his arrival, to which the officer answered, "No." Defense counsel also asked questions regarding: whether Sgt. Chernikovich was able to discern the speed Casas's vehicle was travelling; whether he could see who was driving the vehicle or how many occupants were inside before stopping it; whether a driver might cross a lane line for reasons other than impairment; whether he knew if Casas wore contact lenses; whether he knew if Casas had allergies; whether he knew how long Casas had been awake; and whether he knew if Casas had any injuries that would make it difficult for him to stand steadily. Sgt. Chernikovich answered no to these questions and acknowledged a driver might cross lane lanes for reasons other than impairment from alcohol consumption.

¶ 10       Schiller Park Police Officer Arevalo testified that he came to the scene of the traffic stop. Casas, who was outside of the stopped vehicle, was unbuckling his pants, removing his shoes, and saying he needed to go to the bathroom. His eyes were glassy and bloodshot, and his breath smelled of alcohol. Officer Arevalo asked Casas to submit to field sobriety tests. Casas agreed to the

horizontal gaze nystagmus (HGN) test, during which he exhibited six clues of alcohol consumption. Casas refused further tests, citing a broken toe.

¶ 11        Casas was arrested and transported to the Schiller Park police station. After being placed in an interview room, Casas began shouting that he was going to "bug out" and threw chairs around the room. Officers entered the room and handcuffed Casas's right arm to the wall. Casas continued to behave erratically, kicking a hole in the wall. He then cut his hand while reaching for a metal object, and smeared blood on a wall and mirror. Officer Arevalo stated the cost of the damage exceeded $300.

¶ 12        On cross examination, Officer Arevalo clarified that he did not observe Casas driving a vehicle and he relied on facts relayed by Sgt. Chernikovich in deciding to arrest Casas for DUI. He also acknowledged that the HGN test checks for clues of alcohol consumption, not impairment, and that the clues he observed could have causes other than alcohol consumption. Officer Arevalo further testified that Casas did not submit to a breathalyzer test. Defense counsel asked Officer Arevalo whether he placed Casas in a stranglehold and whether the blood smear on the wall occurred during a struggle between the two. Officer Arevalo denied that either of those occurred.

¶ 13        Due to the cut on Casas's hand, Schiller Park Police Officer Lukowski transported him to a hospital for treatment. Officer Lukowski testified that, while at the hospital, Casas was handcuffed to a bed in the emergency room. He was uncooperative and combative with hospital staff. At one point, Casas stated, in vulgar terms, that he needed to defecate and demanded to be uncuffed and taken to the restroom. A nurse provided Casas with a bedpan, which he refused to use. Casas then stood, began removing his pants, and threatened to throw feces. Eventually, hospital staff brought a commode. Casas used it, begrudgingly. He then threatened to throw feces at anyone who entered the room. For a moment, Casas stopped yelling and stared at the wall.

Officer Lukowski believed Casas had calmed down, so he entered to retrieve the toilet. Casas threw feces at him, striking his uniform vest. Officer Lukowski authenticated photographs depicting him with feces on his vest. After several unsuccessful attempts to implore Casas to cooperate, a physician determined Casas could not be treated at that time and would be released from the hospital.

¶ 14    On cross examination, defense counsel asked Officer Lukowski how Casas stood on the hospital bed if he was handcuffed to it. Officer Lukowski replied, "As best as he could *** He placed his feet on top of the bed, stood up—he was at an angle—removed his pants and attempted to defecate."

¶ 15    In closing argument, defense counsel highlighted the officers' admissions that driving over lane lines or having bloodshot, glassy eyes could be attributed to reasons other than intoxication. She also noted that only one witness, Sgt. Chernikovich, testified to personally observing Casas driving a vehicle and Officer Arevalo relied on what Sgt. Chernikovich relayed to him. Defense counsel further noted that Casas admitted to drinking only one beer and, HGN, the only test administered, tests for consumption, not impairment. As to Casas's "erratic behavior," counsel submitted, the State only proved him guilty of "acting like a jerk."

¶ 16    The trial court acquitted Casas of the aggravated DUI counts, citing the lack of video evidence and chemical testing. The trial court, however, found him guilty of driving on a revoked license. The trial court also acquitted Casas of criminal damage to state supported property since the State presented no evidence to establish that state funds support the Schiller Park police station. The trial court found Casas guilty of aggravated battery of a peace officer, finding Officer Lukowski's testimony credible and corroborated by photographs. At sentencing, the trial court sentenced Casas to five years for aggravated battery of a peace officer and two years for driving

on a revoked license, with the terms to be served concurrently. We allowed Casas's motion for leave to file a late notice of appeal.

¶ 17                                          II. ANALYSIS

¶ 18        On appeal, Casas argues he was deprived of the effective assistance of counsel. Specifically, he asserts that counsel (1) failed to contest the aggravated battery counts and (2) developed a legally defective argument against driving on a revoked license. On the first contention, Casas argues his counsel failed to subject the prosecution's case to meaningful adversarial testing and, therefore, we should presume he was prejudiced in accordance with *United States v. Cronic*, 466 U.S. 648 (1984).

¶ 19        We review claims of ineffective assistance of counsel using the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Lewis*, 2022 IL 126705, ¶ 44. To prevail, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice. *Id*. For prejudice, a defendant must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. ¶ 46.

¶ 20        Some circumstances, however, are so likely to prejudice a defendant that prejudice will be presumed. *People v. Cherry*, 2016 IL 118728, ¶ 25. Pursuant to *Cronic*, prejudice will be presumed when: "(1) the defendant 'is denied counsel at a critical stage,' (2) counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is called upon to represent a client in circumstances under which no lawyer could prove effective assistance." *Id*. (quoting *Cronic*, 466 U.S. at 659-61). *Cronic*, however, is a narrow exception that applies infrequently. *Id*. ¶ 26. A defendant must show "counsel's effectiveness has fallen to such a low level as to amount

not merely to incompetence, but to no representation at all." (Internal quotation marks omitted.) *Id.*

¶ 21        Casas invokes the second *Cronic* exception, arguing that his trial counsel failed to subject the aggravated battery counts to meaningful adversarial testing, effectively conceding guilt on those counts. We observe, however, that counsel did not actually concede Casas's guilt. Nor did she *entirely* fail to subject the State's case on those counts to adversarial testing. Counsel asked Officer Lukowski how Casas could have stood on the hospital bed if, as the officer had testified, Casas was handcuffed to it. The question cast doubt on the credibility of Officer Lukowski's account, since, without the further explanation he gave, the action would seem difficult, if not impossible. In addition, in apparent reference to the incident, counsel argued the State had only proven Casas guilty of "acting like a jerk." The argument implied that Casas's actions were not so serious as to constitute "physical contact of an insulting or provoking nature." 720 ILCS 5/12-3(a) (West 2020). Though counsel's efforts to challenge the aggravated battery counts were minimal and unsuccessful, she did not entirely fail to subject them to adversarial testing.

¶ 22        Yet, even if we were to consider counsel's actions as a concession of guilt on the aggravated battery counts, we would still not presume prejudice. In *Cherry*, our supreme court stated, " '*Cronic* only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, *Strickland* is the more appropriate test.' " (Emphasis in original.) *Id.* (quoting *United States v. Holman*, 314 F. 3d 837, 839 n. 1 (7th Cir. 2002)). In the cited case, *Holman*, the Seventh Circuit applied *Strickland* rather than *Cronic* where, like here, a defendant claimed ineffective assistance when trial counsel did not oppose all counts. *Holman*, 314 F. 3d at 839 n. 1. Thus, the court viewed counsel's performance a partial defense and rejected that conceding guilt on some counts constitutes failure to subject the prosecution's case to meaningful

adversarial testing. See *People v. Johnson*, 128 Ill. 2d 253, 270 (1989) (finding counsel's concession to murder while opposing other counts was not an entire failure to subject the prosecution's case to adversarial testing); *People v. Adkins*, 239 Ill. 2d 1 (2010). Taking direction from *Cherry* and *Holman*, we cannot presume prejudice here, since Casas's trial counsel mounted at least a partial defense. To be sure, he was acquitted of five of the nine counts he was tried on. Thus, counsel's performance cannot be said to amount to no representation at all.

¶ 23    Casas acknowledges the quotation from *Cherry* but argues it does not reflect a proper reading of *Cronic*. He cites the Seventh Circuit's more recent decision in *Lewis v. Zatecky*, 993 F. 3d 994 (7th Cir. 2021) and this court's decision in *People v. Downs*, 2017 IL App (2d) 121156-C, to contend that *Cronic* should apply here.

¶ 24    In *Lewis*, the court found counsel abandoned the defendant at sentencing, by stating only, "Judge I'm going to defer to Mr. Lewis if he has any comments. I don't have anything to add." *Lewis*, 993 F. 3d at 998, 1006. In *Downs*, the court found appointed counsel abandoned the defendant in a *Krankel* proceeding by withdrawing nonfrivolous *pro se* claims and advocating against the defendant's interests.[4] *Downs*, 2017 IL App (2d) 121156-C, ¶ 68.

¶ 25    We are not persuaded that *Lewis* or *Downs* signal a departure from the quotation in *Cherry* regarding a partial defense. Rather, *Lewis* and *Downs* reinforce that a defendant is denied the assistance of counsel when counsel abandons them at a critical stage. Counsel's defense here did not amount to abandonment at trial.

¶ 26    Additionally, counsel's performance may have resulted from trial strategy. She could have determined that Casas had no viable defense to the aggravated battery counts but he did for the

---

[4]In *People v. Krankel*, 102 Ill. 2d 181 (1984), the Illinois Supreme Court established a posttrial procedure to examine a defendant's *pro se* claims of ineffective assistance of trial counsel. If the court finds the claims show possible neglect, the court appoints counsel for a "*Krankel* hearing" on the claims.

DUI counts. Thus, it would be strategic to give little attention to the aggravated battery counts to keep the court focused on weaknesses in the State's case on the DUI counts. See *Johnson*, 128 Ill. 2d at 270 (recognizing that counsel risks losing credibility with the trier of fact on charges where a legitimate defense exists by contesting charges where there is overwhelming evidence of guilt and no defense).

¶ 27    Next, Casas contends his trial counsel was ineffective for pursuing a legally erroneous defense to driving on a revoked license. In her opening statement, counsel stated Casas was "actually parked in a parking lot and not driving the vehicle." And when cross examining Sgt. Chernikovich, she twice asked him whether he found Casas in a vehicle parked in a parking lot. From this, Casas infers that counsel misapprehended the law, believing the State had to prove he was driving a vehicle. But the State only needed to prove Casas was in physical control of a motor vehicle. See 625 ILCS 5/6-303(a) (West 2020). Thus, he argues, counsel gave the court no choice but to find him guilty.

¶ 28    We observe that, apart from the single assertion in her opening statement and the questions posed to Sgt. Chernikovich, counsel never articulated a defense premised on Casas being parked rather than driving. So, counsel's exact legal theory is unclear.

¶ 29    In addition, the record reveals no basis for counsel to believe Casas was parked in a parking lot. Nevertheless, the argument would not necessarily have been legally erroneous. To prove driving on a revoked license, the State must show a person drove or was "in actual physical control of a motor vehicle on any highway of this State." *Id*. A privately owned parking lot is not a "highway of this State." *People v. Montelongo*, 152 Ill. App. 3d 518, 523 (1987). Accordingly, being parked in a parking lot could be a valid defense.

¶ 30    For these reasons, we cannot conclude that counsel's performance was objectively unreasonable or that Casas was prejudiced. Therefore, his ineffective assistance claim is without merit.

¶ 31                                    III. CONCLUSION

¶ 32    Based on the foregoing, we affirm the judgment of the circuit court.

¶ 33    Affirmed.