NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250815-U

NO. 4-25-0815

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| ERIC PONDELL, | ) | No. 23CF860 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant failed to establish he was denied the effective assistance of counsel at
the hearing on his motion to withdraw his guilty plea.

¶ 2    Defendant, Eric Pondell, pleaded guilty to stalking (720 ILCS 5/12-7.3(a)(2)

(West 2022)) and was sentenced to 180 days in jail and 30 months of probation. He filed a

motion to withdraw his guilty plea, which the trial court denied following a hearing. On appeal,

defendant argues he "was denied the effective assistance of counsel when at the hearing on his

motion to withdraw guilty plea, counsel was unfamiliar with the facts of the case." We affirm.

¶ 3                                I. BACKGROUND

¶ 4                                  A. Charges

¶ 5    In May 2023, defendant was indicted on one count each of violation of an order of

protection (count I) (*id.* § 12-3.4(a)(1)), stalking (count II) (*id.* § 12-7.3(a)(2)), and resisting a

peace officer (count III) (*id.* § 31-1(a-7)). The State alleged in count II that "defendant knowingly engaged in a course of conduct directed at Jade Parks, which he knew would cause a reasonable person to suffer emotional distress, in that [he] on multiple occasions made repeated nonconsensual contact by phone and unannounced in person at her residence."

¶ 6                                    B. Guilty Plea

¶ 7         On June 5, 2023, defendant pleaded guilty to count II in exchange for the State's agreement to dismiss counts I and III, dismiss Winnebago County case No. 23-CF-906, and cap its sentencing recommendation at 180 days in jail and 30 months of probation.

¶ 8         The State provided the following factual basis for the guilty plea:

"On April 13, 2023, just after midnight, county deputies responded to 3802 Capron Drive for a violation of an order of protection complaint. They were advised that Jade Parks had reported [defendant] was at her residence in violation of [an order of protection].

While responding to the scene, deputies located a vehicle believed to have been occupied by the defendant *** and located him in the area in that vehicle.

Later on, Deputy Rincon went to the residence and spoke with Jade. Jade provided the Ring doorbell video of [defendant] coming to the front door of the residence and attempting to gain entry into the residence. That video also depicted him looking under the front porch for a key, attempting the garage door to gain entry, also checking the sliding back door as well. Jade told Deputy Rincon that she was alarmed and disturbed by the defendant's actions also noting that he placed his wedding ring on a brick by the door.

On April 26, 2023, Detective Hines followed up with Jade Parks to discuss

- 2 -

other incidents involving [defendant]. Jade stated that about a week after she filed for her [order of protection], but before it was served on April 10th, 202[3], at 3:40 a.m., [defendant] came to her house at 3802 Capron Drive and tried to get in. The locks had been changed and his key did not work. She provided a video of that incident as well. She also said he had been calling her nonstop throughout that time."

¶ 9    The trial court, after admonishing defendant in compliance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), accepted defendant's guilty plea as "knowingly, intelligently, and voluntarily made and supported by a factual basis." The court entered a written judgment sentencing defendant to 180 days in jail and 30 months of probation.

¶ 10                    C. Motion to Withdraw Guilty Plea

¶ 11    On July 5, 2023, defendant *pro se* filed a motion to withdraw his guilty plea, asserting, in part, "I have evidence of my innocence to this charge." The trial court reappointed plea counsel, Matthew Jura, to represent defendant on his motion. Attorney Jura was later replaced by Rebecca Chinery, who, in turn, was replaced by defendant's final counsel, Joseph Hoffman.

¶ 12    In August 2024, defendant, through Attorney Chinery, filed an amended motion to withdraw his guilty plea, arguing the plea was not made "knowingly, intelligently, and voluntarily." Defendant alleged he "was under duress when he entered into the plea agreement, which is corroborated by John Tewell, his cellmate." He attached the following sworn statement provided by Tewell:

"I was incarcerated with [defendant] at the Winnebago County jail when I was last incarcerated at the *** jail. During this time, I did befriend [defendant]. I

noticed that [he] had mental health issues. *** [Defendant] would have episodes where he would start hitting the walls with his hands and with his head. I remember one time after he came back from court, he locked himself in his cell and started kicking the wall, punching the door, and screaming as loud as he could. [Defendant] was very distraught because he thought he was getting out that day. [He] wanted to get home to check his cat. Later, [he] told me that he wanted to take the plea deal to get out of custody so he could 'take a piss on his mother's grave, give his friend back his guitar, then he was going to hang himself.' ***

I do not feel that [defendant] was mentally capable of making life decisions when he took the plea deal."

Defendant further alleged in his motion that he "does have a defense against the charges he pled to." Specifically, he alleged the following in an addendum to his motion:

"b. To sustain a conviction of stalking, the State would have to show that [defendant] engaged in a course of conduct that would cause a reasonable person to suffer emotional distress.

c. The evidence shows that on April 10, 2024 [*sic*], [defendant] went to 3802 Capron Dr. and attempted to gain entry with his key. When the key did not work, the Ring doorbell shows [defendant] walking away from the residence. At this time, the complaining witness had an unserved order of protection against [defendant].

d. On April 13, 2024 [*sic*], [defendant] again attempted to gain entry to the home. He was unable to and left his wedding ring on a brick by the door.

e. The State has not provided any evidence of threats, surveillance, or

apprehension of immediate or future harm."

¶ 13                              D. Hearing on Defendant's Motion

¶ 14        On August 4, 2025, after numerous continuances, the trial court conducted a hearing on defendant's motion, at which defendant was represented by Attorney Hoffman. The court denied defendant's request for a continuance to rehire Attorney Chinery. The court stated, "This plea is from over two years ago. We're doing this hearing today."

¶ 15        After the trial court denied defendant's request, Attorney Hoffman presented the following argument on defendant's behalf:

        "MR. HOFFMAN: So, Judge, I just—I really don't know much at all about the *** underlying case. All I know is that [defendant] feels like he didn't—

        THE COURT: Do you want to call him to testify, or do you want to just proceed by proffer and argument?

        MR. HOFFMAN: So [defendant] indicates he does not wish to testify for the purpose of this hearing. It does appear that he feels that it wasn't a voluntary plea. He felt pressured. Part of that might have been he wanted to get home to his cat. Mr. Tewell, his former cellmate while the case was pending, notes in his statement that he would have to try to keep [defendant] occupied with games and keep him from misbehaving, let's say in the, in the jail cell with kicking and punching the door and just being really upset.

        And *** then there's at the end of Mr. Tewell's statement there's a concerning statement about why he was going to take the plea, which included possibly committing suicide. So it does appear that he may have been under

duress. Obviously, I wasn't the attorney during the plea, nor was Ms. Chinery, but I'm just standing on the work that she did and Mr. Jura did. Oh, and I guess I would just for the record note that in the addendum to the motion to withdraw plea, Ms. Chinery points out that she believes [defendant] may have a valid defense in that the State might not be able to meet its burden as to a Class 4 felony assault."

Defendant was also given an opportunity to explain to the court why he believed his guilty plea was not voluntary.

¶ 16         After hearing the arguments of the parties, the trial court denied defendant's motion. The court stated the following:

"So I don't—whereas I have empathy for *** you feeling emotional today and you telling me that you felt emotional on th[e] day [of the guilty plea], there's nothing that I've been provided in the transcript [of the guilty plea hearing], this hearing today, the addendum, or the statement of Mr. Tewell that would lead me to believe that you didn't knowingly, intelligently, and voluntarily waive your right to a jury trial, nor that you did not fully understand or comprehend everything that was going on."

¶ 17         This appeal followed.

¶ 18                                   II. ANALYSIS

¶ 19         On appeal, defendant raises two alternative claims that he "was denied the effective assistance of counsel when at the hearing on his motion to withdraw guilty plea, counsel was unfamiliar with the facts of the case." First, he contends that under the standard established in *United States v. Cronic*, 466 U.S. 648 (1984), counsel was *per se* ineffective

- 6 -

because "counsel failed to subject the prosecution's case to meaningful adversarial testing." Alternatively, he contends that under the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), he "was prejudiced by *** counsel's deficient performance because there is a reasonable probability that, but for the deficient performance, [his] motion to withdraw guilty plea would have been granted." We review claims of ineffective assistance of counsel *de novo*. See, *e.g.*, *People v. Synowiecki*, 2023 IL App (4th) 220834, ¶ 25.

¶ 20          A. *Per Se* Ineffective Assistance of Counsel Under *Cronic*

¶ 21          First, defendant argues that "[b]ecause [counsel] had not been given enough time to prepare for the hearing and did not know the facts of the case, *** counsel failed to subject the prosecution's case to meaningful adversarial testing" and was therefore *per se* ineffective under *Cronic*. More specifically, defendant argues:

> "[E]ven were it the case that standing on the motion filed by prior counsel and neglecting to meaningfully add to [his] argument at the hearing was not *Cronic* error, going further and suggesting that [his] claims were legally dubious had the effect of meeting the State's burden for it, just as was the case in [*People v. Morris*, 209 Ill. 2d 137 (2004)]."

¶ 22          Generally, a claim of ineffective assistance of counsel is analyzed under the familiar two-prong test articulated in *Strickland*—and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984)—which requires a defendant to show both that his counsel's performance was deficient and that the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687. However, "there are some circumstances so likely to prejudice the accused that such prejudice need not be shown but instead will be presumed." *People v. Cherry*, 2016 IL 118728, ¶ 25 (citing *Strickland*, 466 U.S. at 692). In *Cronic*, a companion case to *Strickland*, the

- 7 -

Supreme Court "explained that prejudice may be presumed where (1) the defendant 'is denied counsel at a critical stage,' (2) counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is called upon to represent a client in circumstances under which no lawyer could prove effective assistance." *Id.* (quoting *Cronic*, 466 U.S. at 659-61).

¶ 23 Relevant to the instant appeal is the second exception to the *Strickland* test— namely, the failure "to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Our supreme court has explained just how difficult it is to establish this type of claim of *per se* ineffectiveness:

> "In discussing this exception, the Supreme Court has characterized it as a 'narrow exception' to *Strickland* that 'infrequently' applies. *Florida v. Nixon*, 543 U.S. 175, 190 (2004). Indeed, for this exception to apply, it is not enough that counsel failed to oppose the prosecution 'at specific points' in the proceeding. *Bell v. Cone*, 535 U.S. 685, 697 (2002). Rather, 'the attorney's failure must be complete,' meaning that 'counsel failed to oppose the prosecution throughout the *** proceeding as a whole.' *Id.* In *People v. Caballero*, 126 Ill. 2d 248 (1989), this court explained that the second *Cronic* exception applies when 'counsel's effectiveness has fallen to such a low level as to amount not merely to incompetence, but to no representation at all.' (Internal quotation marks omitted.) *Id.* at 267 (citing *Cronic*, 466 U.S. at 659). *** Elsewhere, the Seventh Circuit has explained that '*Cronic* only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, *Strickland* is the more appropriate test.' (Emphasis in original.) *United States v. Holman*, 314 F.3d 837,

839 n.1 (2002)." *Cherry*, 2016 IL 118728, ¶ 26.

¶ 24    Here, at the hearing on defendant's motion to withdraw his guilty plea, counsel began his argument by stating, "So, Judge, I just—I really don't know much at all about the case, underlying case." Counsel continued, "It does appear that [defendant] feels that it wasn't a voluntary plea. He felt pressured." Counsel then discussed the contents of Tewell's sworn statement before stating, "So it does appear that [defendant] may have been under duress. Obviously, I wasn't the attorney during the plea, nor was Ms. Chinery, but I'm just standing on the work that she did and Mr. Jura did." Counsel concluded his argument by noting, "Ms. Chinery points out that she believes [defendant] may have a valid defense in that the State might not be able to meet its burden as to a Class 4 felony assault."

¶ 25    As indicated above, defendant argues:

> "[E]ven were it the case that standing on the motion filed by prior counsel and neglecting to meaningfully add to [his] argument at the hearing was not *Cronic* error, going further and suggesting that [his] claims were legally dubious had the effect of meeting the State's burden for it, just as was the case in *Morris*."

According to defendant, "[b]y stating that '[i]t does *appear* that [defendant] *feels* that it wasn't a voluntary plea,' [counsel] framed the issue as a legally dubious emotional attempt to get out of the plea, rather than a legally plausible assertion of constitutional rights." (Emphases in original.). In his reply brief, defendant asserts that *Morris* stands for the following legal proposition: "Where counsel makes an argument that is legally insufficient even if accepted in its factual entirety, that argument is a nullity and counsel has failed to subject the State's case to meaningful adversarial testing."

¶ 26    In *Morris*, at the defendant's murder trial, defense counsel "readily admitted" the

defendant's guilt in her opening statement to the jury for the purpose of laying the groundwork for "a plea for jury nullification based on sympathy or compassion." *Morris*, 209 Ill. 2d at 182-83. The supreme court described defense counsel's strategy as "advancing a minimal, nonlegal defense." *Id.* at 184. However, the supreme court explicitly held that "defense counsel's performance in the case at bar cannot be considered *per se* ineffective simply because the defense which she offered at trial was a nonlegal plea for jury sympathy." *Id.* Instead, as the supreme court later explained in *Cherry*:

> "[W]hat tipped the scales in *Morris* was that, after conceding her client's guilt and pursuing a nonlegal plea for jury sympathy, defense counsel then affirmatively introduced evidence of her client's involvement in a grisly and unrelated murder, even though the trial court previously had ruled such evidence inadmissible at defense counsel's request." (Emphasis omitted.) *Cherry*, 2016 IL 118728, ¶ 28.

See *Morris*, 209 Ill. 2d at 187-88 ("Once defense counsel introduced the extensive and inflammatory evidence regarding the [other] murder, the minimal but constitutionally acceptable strategy of appealing to the jury's sympathy regarding the murder [at issue] was utterly negated.").

¶ 27 We find defendant's reliance on *Morris* unpersuasive. Even assuming, *arguendo*, that defendant accurately characterizes counsel's argument at the hearing as a "legally dubious emotional attempt to get out of the plea, rather than a legally plausible assertion of constitutional rights," this is not enough to establish *per se* ineffectiveness. Contrary to defendant's repeated assertions, defense counsel in *Morris* was not *per se* ineffective simply for advancing a "legally dubious" or "legally insufficient" argument—indeed, the supreme court explicitly stated, "[D]efense counsel's performance in the case at bar cannot be considered *per se* ineffective

- 10 -

simply because the defense which she offered at trial was a nonlegal plea for jury sympathy." *Id.* at 184. Rather, defense counsel in *Morris* was *per se* ineffective because she advanced a "nonlegal defense" and then "utterly negated" that defense by introducing highly prejudicial evidence of another murder the defendant had committed. *Id.* at 184, 187-88.

¶ 28　　　　In the instant case, counsel did not "utterly negate[ ]" defendant's claim that his plea was involuntary. *Id.* at 188. Unlike in *Morris*, counsel here did not introduce evidence that was highly prejudicial to and contradictory of defendant's claim. Counsel did not introduce any evidence at all. Counsel's actions in this case were substantially similar to the actions of defense counsel in *Cherry*, where, at a postsentencing *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), "counsel simply adopted and repeated the *pro se* arguments contained in [the] defendant's *** letter while doing 'nothing to advance [those] claims or counter the State[']s arguments.' " *Cherry*, 2016 IL 118728, ¶ 23. Although the *Cherry* court acknowledged that defense counsel arguably "should have done more *** to develop and advance [the] defendant's *pro se* claims, such as introduce evidence and call relevant witnesses," it nonetheless held that "counsel's failure to introduce evidence or testimony in support of [the] defendant's *pro se* ineffective assistance claims hardly rises to the level of 'entirely fail[ing] to subject the prosecution's case to meaningful adversarial testing.' " *Id.* ¶ 29. Like defense counsel in *Cherry*, counsel here simply stood on the arguments raised in defendant's motion. *Id.* ¶ 23. While counsel certainly could have done more at the hearing to advance defendant's claims, we reject the argument that counsel was *per se* ineffective. See *id.* ¶ 29 ("[I]f established, [defense counsel's alleged] failure would fall squarely in the category of poor representation, not 'no representation at all.' ").

¶ 29　　　　　　　B. Ineffective Assistance of Counsel Under *Strickland*

- 11 -

¶ 30　　　　　Defendant also argues that, under *Strickland*, he "was prejudiced by *** counsel's deficient performance because there is a reasonable probability that, but for the deficient performance, [his] motion to withdraw guilty plea would have been granted." With respect to the prejudice prong, defendant argues that "constitutionally sufficient counsel would have had several levers to pull in convincing the trial court to *** allow the motion." Specifically, defendant first contends the motion may have been granted if counsel had called "an expert [witness] willing to testify that a person in [defendant's] position would have been unable to knowingly, intelligently, and voluntarily waive their trial right." In addition, defendant asserts the motion may have been granted if counsel had "described in greater detail the argument that the State would not be able to meet its burden as to one of the charged offenses" because "[t]he Illinois Supreme Court has noted that a defendant is less likely to plead guilty if they have a strong defense." (citing *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005)).

¶ 31　　　　　To establish a claim of ineffective assistance of counsel under *Strickland*, a defendant must show both that his counsel's performance was deficient and that the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687. More specifically, "a defendant must demonstrate that (1) counsel's performance was objectively unreasonable compared to prevailing professional standards and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cherry*, 2016 IL 118728, ¶ 30 (citing *Strickland*, 466 U.S. at 688, 694). "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that [the] defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81. "Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel." *Cherry*, 2016 IL 118728 ¶ 24.

¶ 32        "A defendant does not have an automatic right to withdraw her guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*, 2021 IL 125642, ¶ 37 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47). "Rather, a defendant must establish a manifest injustice under the facts involved." *Id.* "A guilty plea may be withdrawn where it was entered through a misapprehension of the facts or law or where there is doubt as to the guilt of the accused and justice would be better served by conducting a trial." *Id.*; see *People v. Kokoraleis*, 193 Ill. App. 3d 684, 691 (1990) ("A motion to withdraw a guilty plea may also be allowed where the defendant has a defense worthy of consideration."). "In order to vacate a plea based on a misapprehension of law or fact, the defendant must establish, under an objective standard, that her mistaken beliefs or impressions were reasonably justified under the circumstances as they existed at the time of the plea." *Burge*, 2021 IL 125642, ¶ 37.

¶ 33        As stated above, defendant first argues that he was prejudiced by counsel's failure to call "an expert [witness] willing to testify that a person in [his] position would have been unable to knowingly, intelligently, and voluntarily waive their trial right." We reject defendant's argument. Critically, at no point has defendant indicated that there was, in fact, a mental health expert who could have testified that defendant's mental state at the time of his plea was such that he could not have entered it voluntarily. The State highlights this fact in its appellee's brief, stating that defendant's argument "is speculation and should fail." In his reply brief, defendant fails to respond to the State's contention. Thus, because defendant's argument that an expert witness could have testified in the manner suggested is based on pure speculation, it is insufficient to satisfy the prejudice prong of *Strickland*. See *Patterson*, 2014 IL 115102, ¶ 81 ("Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that [the] defendant may have been prejudiced.").

¶ 34 We likewise reject defendant's argument that he was prejudiced by counsel's failure to "describe[ ] in greater detail the argument that the State would not be able to meet its burden as to one of the charged offenses." In his appellant's brief, defendant supports this argument with two statements. First, he states, "In the addendum to the motion, [he] alleged that 'The State has not provided any evidence of threats, surveillance, or apprehension of immediate or future harm.' " Second, he states, "By working to raise legitimate doubt on the State's ability to secure a conviction, counsel would aid the argument that the plea was not knowing, intelligent, and voluntary, further increasing the probability that the court would grant leave to withdraw the guilty plea."

¶ 35 In rejecting defendant's argument, we note again that to succeed on a claim of ineffectiveness, it is defendant's burden on appeal to demonstrate *actual* prejudice. See *id.*; see also *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (stating that the "defendant, as the appellant, bears the burden of persuasion as to its claims of error"). In other words, it is defendant's burden to point to specific facts in the record—such as, for instance, specific facts from the factual basis for his plea—that could lead a court to reasonably doubt his guilt. See *Burge*, 2021 IL 125642, ¶ 37. However, here, defendant has not identified a single, specific fact in support of his claim that the State likely could not have proven him guilty of stalking (720 ILCS 5/12-7.3(a)(2) (West 2022)). He makes no attempt to argue that the factual basis for his plea was somehow insufficient, nor does he claim that there is evidence to refute any portion of it. We therefore find that he has failed to satisfy his burden of showing actual prejudice, as his argument consists of nothing more than conclusory statements. *Patterson*, 2014 IL 115102, ¶ 81.

¶ 36 Accordingly, because we find defendant has failed to satisfy the prejudice prong

of *Strickland*, we need not address the deficiency prong in rejecting his ineffectiveness claim. See, *e.g.*, *Cherry*, 2016 IL 118728, ¶ 24 ("Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel.").

¶ 37                                    III. CONCLUSION

¶ 38          For the reasons stated, we affirm the trial court's judgment.

¶ 39          Affirmed.